## KNOX v. RIVES, BATTLE & CO.

1. The plaintiff having proved, that a steamboat of the defendants' was engaged in carrying goods and merchandize generally for hire, and the general custom of boats engaged in similar business with that of the defendants: Held, that it was admissible for the defendants to explain the usage, by showing, that no freight, or compensation was ever charged, or allowed upon remittances of money, unless some evidence was given by the boat of its receipt, in which event only a charge was made.

2. It is not necessary, to constitute one a common carrier, that a stipulation should be entered into as to the amount of freight to be paid. But unless a *right to compensation exists*, the common law liability of a common carrier is not created, though there may be the responsibility of a mandatory incurred.

3. The proof was, that although it was the uniform custom of steamboats to carry cash letters, no charge was made for such service, unless a receipt was demanded by the shipper, when a charge of one fourth of one per cent. was made upon the amount of the bills: Held, that it was not improper for the court to leave to the jury, the question of fact, whether cash letters belonged to that class, or character of goods, which the boat undertook to carry for hire.

Error to the Circuit Court of Mobile.    Before the Hon. J. Bragg.

CASE by the plaintiff in error, against the defendants, as common carriers. Upon the trial, the plaintiff proved that the defendants were the owners of the steamboat Montgomery, and that the boat was used for the purpose of transporting for hire, goods and merchandize. That it was notorious a large portion of the proceeds of the cotton crop of the State, was sent into the interior in bank bills, inclosed in packages, known as cash sealed letters, conveyed by means of steamboats, engaged in the same trade as the Montgomery. That the packages were always delivered to the clerk of the boat, whose business it was to receive and deliver freight. This had always been the case since boats had been running upon the rivers of the State, until the happening of the loss in this

32

case, when the defendants advertised they would not be liable for such loss.

The plaintiff then proved by a witness, that having in his possession $2,500 belonging to the plaintiff, who resided in Montgomery, he took the same sealed up, and directed to him, to the clerk of the steamboat Montgomery, and delivered it to him, in his office, on board of the boat, and requested him to take charge of it, and deliver it to the plaintiff. That he received it, and a few hours afterward the boat left for Montgomery. The plaintiffs proved a demand of the package from the defendants, but they failed to account for it, and denied any responsibility in reference to it.

The defendants then introduced a number of witnesses, who testified that for many years they had been largely engaged in the business of merchants, in the city of Mobile; that they had been long in the habit of sending by steamboats, cash letters to the interior of the State. That such letters were always sealed, and delivered to the boat, going into the interior, without such clerks having any positive knowledge of their contents. That this transportation of cash letters, was always considered an act of accommodation, and that they had never heard of any hire, or pay being demanded for such service after it had been performed. Some of the witnesses stated, that if a receipt was demanded for such cash letters in advance, it was usual for the boats to charge one quarter of one per cent. on the amount, and then the transaction was entered on the books of the boat, as others, for freight. But the general rule, and universal custom was, when this was not done, to hand the package to the clerk of the boat, who took it, and delivered it free of charge. That these letters were delivered indiscriminately, by all persons, as well those who were not, as those who were patrons of the boat. The plaintiffs excepted to the evidence of the custom.

The defendants further proved, that it had never been known that the owners of boats advertised, or otherwise admitted they would be liable for the carriage of such letters. They further proved, that the advertisement made by the defendants, after the loss in this case, was made in pursuance of the advice of counsel, and only denied their responsibility

as owners of the boat, for cash letters, but did not forbid their being carried on the boat, and that in fact money had been carried on the boat in the same manner, as before the advertisement.

Several witnesses were examined as to the custom, and liability of the boat, subject to the opinion of the court; and the plaintiff then asked a witness the following question: " When, as owners, you receive such packages to be carried as directed, did you, or not, in the custody, and carriage thereof, and in the control and directions to the clerk, to whose immediate charge such packages were entrusted, treat the same as other freight, and assume the same liability therefor. This question was objected to, but was allowed, and was answered in the affirmative. The plaintiff further proved, that by this accommodation in carrying cash letters, the owners of boats expected to secure business, and patronage. The court excluded all the testimony, so far as it went to give the opinions of individuals, as to the liability òf the parties.

The clerk of the boat, also, was examined by the defendants, who, among other things, stated that he never made any report whatever to the owners of the boat, and they knew nothing of the receipts of such letters.

The court charged, that the defendants were bound by the act of their clerk, if bound at all, as much as if they had received the cash letter themselves. That the defendants were sued as common carriers, and that a common carrier was one, who undertakes to carry or transport goods for hire, or reward. That the term *goods*, as used and understood by the common law, would include in its definition, money, whether in specie, or bank bills. That it did not follow, that a common carrier was to be considered as a carrier of all kinds of goods. The just construction of the definition, is, that the party is a common carrier, only as to such character of goods, as he undertakes to carry for *hire*, and is not a common carrier, as to such as he does not undertake to carry for hire. In the latter case, he would be simply a mandatory, or bailee. That if cash letters belonged to that class, or character of goods, which the defendants undertook to carry for hire, and reward, they were liable to the plaintiff; if they

did not, the defendants were only bailees, and not liable as common carriers.

To the charges of the court, as contained in the third and fourth propositions, the plaintiff excepted; and now assigns for error, the matters of law arising out of the bill of exceptions.

HOPKINS, with whom was PHILLIPS, for the plaintiff in error.

The liability of a common carrier rests not so much upon the receipt, of hire, or reward, as upon the principles of public policy. Story on Bail. § 490.

The owners of a steamboat engaged in the transportation of goods and merchandize, are liable as common carriers. Jones v. Pitcher, 3 S. & P. 177.

Even if the hire or reward was the foundation of the liability, no contract is necessary to be shown, as the performance of the service would entitle the party to a *quantum meruit.* Moody v. Keener, 7 Port. 218; Allen v. Sewall, 2 Wend. 327; Story on Bail. § 505.

2. Bank bills are fairly included in the term "goods and merchandize," and the undertaking of a steamboat to carry them would give a right to demand freight of the shipper, and imposes the usual obligation on the carrier. Kemp v. Caughtry, 11 Johns. 121; Spencer v. Blaesdel, 4 N. H. 200; Barnett v. Bass, 10 Ala. R. 953; Allen v. Sewall, 2 Wend. 339; Same, 6 Id. 350; Mayhem v. Eames, 10 Eng. C. L. 195; and see Aby v. S. B. Paul Jones, MS. decision from the Commercial Court, New Orleans; 2 Kent's Com. 5th ed. 609.

3. The proof was, that it was not customary to charge freight upon cash letters; but this was subject to the limitation, that when a receipt, or bill of lading, was asked by the shipper, freight was charged, and this went into the general earnings of the boat: and further, that the carrying of letters was a universal practice, and well known to the owners of steamboats.

Reverse the parties in this cause. If the action was brought by the owners for the freight—having proved the carriage of the money—could the demand for freight have

been resisted by the shipper? The answer to this question seems to be conclusive of the cause.

If it were necessary to fix the liability of a carrier—that proof should be made of his custom to carry a particular kind of merchandize—such proof is to be found in the record. The owners of the boat assent to this custom; it makes the law of their contract; the world deals with them as common carriers, and their omission to charge freight is a matter between them and the particular customer; not affecting their general liability, or preventing their charging some, and refusing to charge others.

It is evident that the inducement for the omission to charge, is to be found in the fact that the money sent into interior is the return for the crops sent by these boats to the market; and as the risk and trouble is but small, they are enabled thus to conciliate those whose patronage affords them employment.

The carrying of this kind of goods and merchandize fixes the rights and liabilities of the parties. This seems to be the ground of decision in the case of Stone v. McReary, yet in MS., and which we believe is still before the court on a petition for re-argument. Suppose a stranger in Mobile to take a package of bills to a boat, and should inquire of the master or owner whether he would receive them, to be delivered at Montgomery. He is answered affirmatively, and the package is delivered. Nothing is said about the freight, because the shipper knows that this will be settled by the consignee before delivery: this is the right of the carrier. Could a failure to deliver be excused upon such pretence as is set up in this record? If the carrier would be allowed to insist upon an usage not to charge, he must at any rate show that the shipper knew and understood that usage.

" If the shippers are unacquainted with the usage, it should seem the owners will be liable for the loss, as the master is the general agent of the owner." See Story on Bail. 3d ed. § 529, which refers in the note to Allen v. Sewall, with the remark: " The judgment was reversed in error, but under very special circumstances." See 6 Wend. 350.

And in 2 Kent's Com. 5th ed. 608, Chancellor Kent says: " The case of Allen v. Sewall, was reversed by the court of

errors on the ground that bank bills were not goods, wares and merchandize, within the meaning of the statute incorporating the steamboat company," &c. But the general doctrine in the text as to the liability of common carriers, was not disturbed. And in the text, p. 609, the Chancellor says: "Bank bills are held to be goods within the meaning of the law; and directions to the captain not to carry money, did not excuse the owner, unless notice of such instructions were brought home to the shipper."

Apply the rule as contended for to any other species of bailment—to a watch maker, for instance. You leave your watch for some trifling repair; by want of proper skill, your watch is wholly or partially damaged; you sue for that damage, and the response is, that by the usage of watch makers in Mobile, such repairs were always performed without a reward.

Is there any exception to the rule, that when one at the request of another performs a service, he is entitled to a fair remuneration? And to deprive a party of this, there must be a contract valid in law. Having the right to a remuneration, whether he enforces, or accustoms himself to dispense with it, in no manner affects his liability.

J. A. CAMPBELL, contra.

The question in the court below, was not whether persons who are charged with the delivery of letters containing money might not be made liable in case of the failure to deliver them. The defendants did not deny that position. The question was, whether they were liable *as common carriers*, and subject to the extraordinary liabilities imposed upon that class of dealers. The judge charged the jury conformably to the opinions of Judge Story, in the elaborate exposition of the law on this subject, reported in 2 Story's Rep. 17; except that he decided summarily, that the boat owners were liable to the same extent as their clerk would have been. In other words, that the act of receiving the letter was in the course of his employment as clerk. Judge Story decided in his case, that the boat was not liable. On page 33 of the report, that illustrious judge shows that the business of the boat may be limited, and on page 34 the ques-

tion is stated very distinctly.   "But at all events," says the
judge, "I do not see how the court can judicially say, that
steamboat owners are, either necessarily or ordinarily, to be
deemed, in all cases, common carriers, not only of passengers,
but of goods, and merchandize, and money, on the usual voy-
ages and routes of their steamboats; but the nature and ex-
tent of their employment, and business thereof, must be es-
tablished as a matter of fact, by suitable proofs, in each par-
ticular case."   The question being then of fact, it was inqui-
rable of by the jury.   In the case before Judge Story, he
was judge of law and fact, the case being within the admiral-
ty jurisdiction.   In this case, Judge Bragg properly referred
to the jury the ascertainment of the facts.   Did he properly
state the grounds upon which a liability would have been
incurred?

Judge Story, on page 35 of the report, says, " I take it to
be exceedingly clear, that no person is a common carrier in
the sense of the law, who is not a carrier for hire."   The
ground of liability is stated by Chancellor Walworth, 6 Wen.
346: "There can be no doubt," he says, " that if a common
carrier undertakes the transportation of packages of bank
bills *for hire* or *reward*, he will be liable to the same extent
as if he contracts to carry Spanish milled dollars, or any arti-
cle of merchandize.

Thus it will, appear, that the liability depends upon the
" undertaking" to convey, for "hire and reward."   The
chancellor, in the same opinion, traces the liability of the car-
rier to its origin.   It proceeds from the right to compensa-
tion for the service he undertakes to perform in a public ca-
pacity.

Much stress is laid upon the decision of the supreme court
of New York, in 2d Wendell, in this court being variant
from that of the court of errors.   The point of disagreement
was upon the effect of the evidence upon the point, whether
the captain was the agent of the boat, and acted for it, or
whether he acted on his own account.   The supreme court
decided that he acted for the boat, and the court of errors re-
verse the opinion.

Judge Bragg decided the question for the plaintiffs, and

then directed the inquiry, whether the boat was a carrier of cash letters for hire.

Was there evidence before the jury to authorize the court to place the question before it. The following facts appear:

1. The want of remuneration for services of this description.

2. That the owners of the boat never knew of the number or contents of such packages, though a constant oversight was kept of the business transacted by the boats, and examined the books kept by the officers after each trip.

3. That the clerk never examined the packages, but received them from all persons indiscriminately.

4. No evidence of the receipt of such letters was ever given.

5. That no boat had ever settled a loss of that kind.

6. That merchants and shippers regarded the service as gratuitous.

7. That the clerk received the letters on his personal responsibility, and often refused them, and the owners knew nothing of the matter.

If these facts were believed by the jury, and they were the exclusive judges of the weight to which the evidence was entitled, it is clear that the jury were well authorized in finding the verdict for the defendants. They certainly did not hold themselves to the world as carriers of cash letters for hire.

If the shipment is made without any expectation on either part, that compensation shall follow, the service is gratuitous. We admit that the price of the service need not be agreed on in advance. We agree that the price need not be ascertained in any manner. Judge Story and Chancellor Walworth both state this, but price must have been in the contemplation of both parties, in order to raise a liability on the part of either—on the one part for hire, on the other part as a common carrier.

In reference to the character of the compensetion necessary to make a common carrier, it must be observed, that no charge was asked or given on the subject. No definition was asked of the term hire and reward, and no attempt made to get a charge upon the effect of the general advantage derived

from accommodating the public. The law on this subject is settled in the case of Knapp v. McBride, reported in 7 Ala. 19. The parties were required to ask for an instruction suitable to their case.

CHILTON, J.—The defendants are sued as common carriers, to recover the value of a sealed package, containing $2,500 in bank bills, received on board the steamboat Montgomery, by the clerk thereof, to be carried from the city of Mobile to the city of Montgomery, and to be delivered to the plaintiff. The package was lost.

1. The plaintiff having proved that the boat was engaged in carrying goods and merchandize generally for hire, and the general custom of boats engaged in similar business as the Montgomery, in carrying letters containing remittances of bank bills, we think it was permissible for the defendants to explain that usage, by showing that no freight or compensation was ever charged, or allowed, upon such remittances, unless some evidence was given by the boat of their receipt, in which event only a charge was made; and further, to show that such was the uniform practice of defendants' boat. If we allow the usage to be irrelevant, the proof of it was first introduced by the plaintiff, and in such case rebutting proof is allowed. See Havis v. Taylor, 13 Ala. Rep. 324; Findley v. Prewitt, 9 Porter, 195.

2. The questions raised upon the charges given and excepted to in the court below, are important, as affecting the liability of the owners of steamboats, and the authorities referred to have been carefully considered. The charges, the correctness of which is questioned by the assignment of errors, are as follows: " It does not follow that a common carrier, because he is said to be one who carries goods for hire, is to be considered a carrier of all kinds of goods. The just construction of the definition is, that the party is a common carrier only as to such character of goods as he undertakes to carry for hire, and is not a common carrier as to such as he does not undertake to carry for hire. In the latter case, the party would simply be a mandatory, or bailee." The court further charged the jury, that the question for their de-

33

termination was, "do cash letters belong to that class or character of goods which the defendants undertake to carry for hire or reward. If they do, the plaintiff was entitled to recover, but if they do not, then the defendants were mandatories, or bailees, and not liable as common carriers."

It is insisted on the part of the plaintiff in error, that the charges denied him the right of recovery unless he had proved that the bills in question were carried for hire, or that the boat was accustomed to do so, whereas, having proved the boat a common carrier of goods generally for hire, and the receipt of those bills by the agent of the boat, to be carried to Montgomery, the law implies the liability for reward. The charge of the court must be construed in connection with, and as predicated upon, the proof in the cause. The proof was, that although it was the uniform custom of the boats to carry such packages, no charge had been made for such service, unless a receipt was demanded by the shipper, of the boat, for them, when a charge of one-fourth of one per cent. was made upon the amount of the bills. This charge had not however been made by defendants' boat, and there was no evidence, other than the general usage which had long obtained, that the defendants knew that such packages were conveyed on their boat. Neither was there any evidence of a special undertaking on the part of the defendants in respect to this package; it was merely received, with a promise to deliver it at Montgomery, to the plaintiffs. Taken in connection with this proof, what are we to understand the charge to imply? The court below had already settled, and we think properly too, that bank bills, by the common law, were regarded as "goods," and included in that designation, (Allen v. Sewall, 2 Wend. 339; s. c. 6 Wend. 335, opinion Walworth, chancellor; 12 Johns. Rep. 220; 11 Johns. R. 109,) and that the act of the clerk in receiving the package, was the act of the owners of the boat, if the jury believed the evidence on that point. There was no evidence of any *express undertaking* on the part of the owners of the boat to carry such letters for hire, or that they were excluded from the class of goods which their clerk was authorized to receive and transport, except the proof made as to the "uniform custom" of boats to carry such letters, in

the manner above stated. Construing the charge as applicable to the facts in proof, we must intend the court submitted to the jury the question of fact, whether the package in question was to be transmitted with or without reward; or in other words, whether cash letters belonged to that class, or character of goods, which the boat undertook to carry for hire. That this charge would be improper under a different state of facts, as tending to mislead the jury, will not avail the plaintiff in error. Is it correct as an abstract proposition of law, and was it proper under the proof shown by the bill of exceptions? If it was, we cannot reverse because it was general in its character, and did not embrace other features in the plaintiff's case, upon which, notwithstanding the charge, he may have been entitled to recover. The rule is well settled in this court, that the omission of the court below, to instruct the jury upon all the legal questions presented by the proof in the cause, is not a ground for reversal of a judgment rendered on their verdict; it is enough if the charge is correct as a legal proposition, and is laid down in such manner as not necessarily to mislead the jury. See 1 Ala. Rep. 18; Ib. 607; 2 Ib. 694; 4 Ib. 493; 5 Ib. 421; 7 Ib. 10; 11 Ib. 935-40. If the opposing party desires the court to present to the jury the law as applicable to any particular feature in the cause, he must do so by asking appropriate charges. The form of the charge, if the court was right in assuming that the defendants were not liable as common carriers, if the undertaking was gratuitous, we think more favorable to the plaintiff than the proof would warrant. The court, upon the hypothesis assumed, might well have instructed the jury, that if they believed the proof in respect to the uniform custom and usage of boats to charge no freight unless the shipper demanded a receipt for the package, that they should find for the defendants, for we take it to be the settled law, that where a custom or usage is proved to exist in relation to a particular trade or pursuit, if it be general or uniform, all persons engaged therein are presumed to contract in reference to such usage. This was expressly so ruled by this court in Sampson & Lindsay v. Gazzam, 6 Port. 123, and is sustained by numerous authorities. See Mills v. Bank U. S. 11 Wheat. 431; Doug Rep. 518; Story on Bail.

Knox v. Rives, Battle & Co.

9, § 14; Ib. 255, § 384, 2 Greenl. Ev- 207, § 251; Hosea v. McCrory, 12 Ala. R. 350. Such a general and uniform usage becomes silently adopted and incorporated into the contract, and forms a part of it, as though it had been expressed in it. Such being the law, it is most manifest the plaintiff has not, and could not have been injured by the charge. The shipper having taken no receipt for the package, tacitly stipulates with the boat, that he will pay no freight, and there being nothing unreasonable or illegal in the usage, the law implies no obligation on the part of the shipper to pay; so that if the charge given referred to the jury in effect the legal question as to whether the boat could have recovered upon a *quantum meruit*, it but afforded the plaintiff another chance for success, of which the court should properly have deprived him, by deciding itself the legal question.

We come now to the main question presented by the record, which is, whether the defendants are liable as common carriers for the package received on board their boat, to be transported, without reward, from Mobile to Montgomery; for we must regard the finding of the jury as affirming that the boat undertook to carry such package gratuitously.

To my mind, it is a clear proposition of law, that the payment of freight on the part of the shipper, or the right of the carrier to sue for and recover the same, lies at the foundation of the defendants' liability as common carriers. Lord Coke says, "he hath his hire, and thereby implicitly undertaketh the safe delivery of goods delivered to him." Co. Lit. 89, a. A common carrier, says Judge Story, has been defined to be one who undertakes for hire or reward to transport the goods of such as choose to employ him, from place to place. Com. on Bail. 321, § 495.

In the case of the Citizens Bank v. The Nantucket Steamboat Co., 2 Story's Rep. 16-35, the same learned judge holds this language: "I take it to be exceedingly clear, that no person is a common carrier in the sense of the law, who is not a carrier for hire; that is, who does not receive, or is not entitled to receive, any compensation for his services. If no hire or recompense is payable *ex debito jutitiae*, but something is bestowed as a gratuity, or voluntary gift, then, al-

Knox v. Rives, Battle & Co.

though the party may transport persons or property, he is not a common carrier, but a mere mandatory."

It is admitted that no contract to pay freight is necessary, neither is it necessary that the rate of compensation to be paid should be fixed, but the *right to compensation must exist*. If it does not exist, the defendants are mandatories, not common carriers. To hold that the law would devolve upon the defendants, with respect to such gratuitous accommodation, the liability of insurers, it seems to me, would be repugnant to the dictates of justice. 1 Pick. Rep. 50; Story Bail. § 495, 505; 1 Salk. 249; Allen v. Sewall, 2 Wend. R. 327; s. c. 6 Wend. R. 346.

The views above expressed do not conflict with Hosea v. McCrory, 12 Ala. R. 349. In that case it was held, "that ordinarily, steamboats could not be required to take charge of cash letters, because the business of freighting does not include the transmission of money in that mode, but a general usage being shown on the part of the boat to carry such letters, the court held that usage might impose an additional liability on the owner. In that case the master, by virtue of the usage, was held liable for the package received by the clerk, the jury by their verdict having affirmed the usage fixing his liability, and the want of such diligence as the mandatory was bound to exercise. See also cases there referred to, p. 353.

We have also been referred to the case of Aby v. Steamboat Paul Jones, decided by the commercial court of New Orleans. We have examined the case as we find it reported in the newspapers. The case is very analagous to the one before us. We readily agree, that if the carrier has the right to compensation, he cannot, by waiving that right in any particular case, evade the responsibility which the law attaches, and that if he receives goods to be carried gratuitously, he is bound to exercise ordinary care and diligence in respect to them; but if the court, in that case, intended to affirm that the boat was liable *as a common carrier*, notwithstanding the implied contract resulting from the uniform usage of boats

engaged in the same trade, to carry the package free of charge, we think the conclusion attained opposed to the current of the authorities. The decision is made to turn upon the ground of public policy. Now if the general usage of carriers is to transport such packages free of all charge unless the shipper takes a receipt, in which case alone freight is considered as due, and this usage is so general as that the shipper of the package is charged with a knowledge of it, it seems to me, no principle of public policy demands that the courts should refuse to execute the contract thus tacitly entered into between the parties, and affix to the carrier the rigorous liabilities of the common law, when he contracted to exercise without reward therefor, the diligence and care of a gratuitous bailee. Let the shipper demand his receipt, and then he may insist, that nothing but the act of God, or the public enemy, can discharge the carrier from responsibility. Having failed to do this, we regard him as contracting for the ordinary diligence of a mandatory.

We do not understand Mr. Jeremy, in his work on carriers, to lay down a different doctrine. True, he considers the obligation of the carrier arises more out of a public duty than the consideration to be paid, (p. 5,) but he says, the carrier, in the absence of an agreement to pay freight, may recover what is reasonable, hence he cannot set up the want of such agreement, which the law supplies, to avoid the common law responsibility. Ib. Indeed, he holds that the real ground of contract is founded on a reward, or consideration proportionable to the risk and duty to be performed. Page 55, ch. 5, § 1. See also, Gibbon v. Paynton, 4 Burr. 2299, and cases there cited. Also, 6 Hill's Rep. 157.

The fact that the usage may have originated in a belief on the part of the owners of boats, that their custom and consequent receipts would be enhanced by the gratuitous transportation of such packages, does not, in our opinion, vary their liability. The proof shows such letters were received indiscriminately, and indifferently from all persons, as well from those who were patrons of the boat as from those

who were not. Such consideration would be too vague, indefinite and remote, to form the basis of such extraordinary liability.

In our opinion, there is no error in the record, and the judgment of the circuit court is affirmed.