## FULTON INS. CO. *vs.* MILNER, TINSLEY & CO.

1. An assignment of error which is not insisted on in the argument or brief of the appellant's counsel, must be considered as waived.
2. When it is shown or may be fairly presumed that the parties to a policy contracted in reference to a custom existing in the city where they did business, and where the policy was effected, the general law must give way to the custom.
3. To give validity to a custom regulating the assessment of damages in cases of partial loss on insured goods, it is not necessary that it should extend to the whole State; if the custom is generally known and acted on in the port, city or town where the policy is effected, it is sufficient.
4. The custom in the city of Mobile as to the mode of adjusting damages in cases of partial loss on valued policies, held valid and binding on parties residing and contracting in that city. This custom is, to pay the difference between the sales price of the injured article and the price stipulated in the policy.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN A. CUTHBERT.

ASSUMPSIT by Milner, Tinsley & Co. against the appellant on a valued or closed policy of insurance on seventy-eight boxes of manufactured tobacco, shipped from New York to Mobile on the brig Sarah Brown, sixty of which were injured on the voyage to an extent exceeding fifteen per cent., the minimum stipulated in the policy.

" There was evidence conducing to show that about six boxes were injured by the dangers of the sea, so as to affect the tobacco itself; while only the exterior of the boxes of

the remainder sought to be recovered for were stained by the sea, the tobacco itself being uninjured. The evidence also conduced to show, that the consignees only sold tobacco in boxes; that when a box of manufactured tobacco was stained, it had to be opened, in order to ascertain whether the tobacco itself was injured, as was done in this case; that the fact of opening the boxes materially injured the sale of the tobacco, and that in the sale of manufactured tobacco the box and tobacco were always sold together, and the condition of the tobacco could only be ascertained from the external condition of the box; that all the tobacco sought to be recovered for was sold at public auction by the consignees, and by reason of the condition of the boxes, and from the fact that the boxes had been opened, the tobacco in stained boxes sold at a loss of more than fifteen per cent.

"The court charged that, if the jury believed the stains on the boxes were caused by the dangers of the sea, on the voyage covered by the policy, and that thereby the tobacco was rendered less valuable by more than fifteen per cent., they must find for the plaintiffs on account thereof, although they should believe that the tobacco itself, without regard to the box, was uninjured; to which charge the defendant excepted.

"There was also evidence conducing to prove that the tobacco was insured at forty cents per pound, making the gross sum of $3120 inserted in the policy; but that the tobacco, free from all injury to box or tobacco itself, was, at the time of the sales made of the injured article, or at any time *of* its arrival in Mobile, worth less than the sum insured. The evidence as to its true value was, in substance, that, at the time the insurance was effected, it was worth in Mobile about thirty-five cents per pound, and about a cent less in New York; but that after its arrival, and at different times, boxes of the good, free from stains or other injuries, had been sold at public auction by the consignees, under favorable circumstances, in order to test its value, and that it brought about twenty-eight to thirty-one cents per pound. The question of the *bona fides* of the insured, in inserting forty cents per pound in the policy, was presented, and submitted to the jury by the court in a manner satisfactory to plaintiff and defendant.

"There was also evidence to prove that, by the custom of insurers and insured in Mobile, partial losses on closed policies

are adjusted by paying the difference between the sales price of the injured article and the price stipulated in the policy. On the part of the plaintiffs it was insisted, that this custom furnished the rule for adjusting the loss by the jury ; while on the part of the defendant it was insisted, that the rule was to ascertain a per centum of loss by calculation based on the gross value of the uninjured article per pound and the gross value of the injured article per pound, and then apply the per cent. so found to the sum fixed in the policy. The court ruled, that, if the jury believed the custom in Mobile of adjusting closed policies was as stated, it governed, and that the loss should be assessed on the principle contended for by the plaintiff ; to which defendant excepted."

The two charges of the court above set forth, to which exception was taken, are now assigned for error.

CHANDLER, SMITH & HERNDON, for appellant :

What is the rule for computing the amount to be paid by the insurance office ? For the plaintiff in error it is insisted, that the rule is, to find a per centum of loss by calculation based on the true value of the uninjured and of the injured tobacco, and to apply this to the sum inserted in the policy. This rule is purely mathematical and must be true ; it requires no citation of authorities. But it is also as well and definitely settled by authority.—1 Arnould on Insurance 970 to 974 ; 2 ib. 310, 312 ; Natchez Ins. Co. v. Buckner, 4 Howard's Miss. R. 63, the head note of which is erroneous.

The defendants in error, however, proved that, by the custom of Mobile insurance offices, such losses on such policies are adjusted by subtracting the sale price of the injured article from the value inserted in the policy, and they insist that the custom governs. But " an usage must be established, known, certain, uniform, reasonable and not contrary to law."—2 Green. Ev. § § 250, 251 ; 1 Sandford's S. C. R. 137 ; Anthon's R. 56 ; 7 Leigh 632 ; 5 Shep. 462 ; 5 Dana 501 ; 1 Green. Ev. 422 § 292 ; 2 ib. § 249 ; 10 Mass. 26, 29 ; 15 Mass. 431 ; 14 Mass. 106 ; 12 Pick. 107 ; 14 Pick. 141 ; 21 Pick. 483. " These usages should be sparingly adopted as rules of law, as they are often founded in mere mistake, or in the want of enlarged and comprehensive views of the full bearings of principles."—

2 Green. Ev. § 251. As to the true object of allowing a custom, see 2 Green. Ev. § 251 ; 5 Howard's Miss. R. 744.

The terms employed in this policy are clear ; the risk covered does not embrace the rise or fall of the market, as the rule insisted on by defendants in error would make it ; the principle of calculation is absolutely true, for it is mathematical ; and " when the terms employed are clear and precise in themselves, no evidence of any usage or custom can be admitted to explain, to alter or impair them."—Arnould on Insurance 63. " If the clauses in the policy are clear and unambiguous, the courts cannot permit parol evidence to contradict, to vary or explain them."—*Ib.* 64.

By the rule invoked by defendants in error, can it be ascertained whether the loss is more or less than fifteen per cent ?— Suppose the article sells for fifty per cent. less than the insured sum ; *non constat* but that it did so by fall of market, or because of over insurance. Suppose the article to be damaged only five per cent., the insurers paying nothing unless the damage is fifteen per cent.; and the damaged article sells for twenty per cent. less than the insured sum ; does the insurer pay, because a crude custom exists, founded in wrong and ignorance, of subtracting sales price from insured price ? This would be to make the insurer pay for fall of market. Suppose the article insured for only fifty per cent. of its value; say, for instance, that it is worth $3000, and is insured for $1500, and that there is a damage of twenty-five per cent. It sells for $2250. Does the insured get nothing ? Does he pay the insurer $750, instead of getting something ? That is the consequence of the rule of substraction.

No subject more imperatively demands uniform rules, known, settled, clear and just rules, than the construction of policies. Their form is almost the same at Lloyd's and at the smallest office of the inland town. They have been allowed to retain their seemingly senseless jargon, because of these considerations, and because the meaning of the terms has been settled. Instead of looking to the decisions of Lord Mansfield, " whose judgments were not bottomed on narrow views, or, on this question, on the municipal regulations of England, but on those great principles of public justice and convenience which had been sanctioned and approved by universal experience ;" whose

"deep and extensive learning was acquired by consulting the most intelligent merchants, and the works of distinguished foreign jurists, and by carefully studying the French ordinance of 1681," are the courts to grope about into every port where a ship may float, to see what rule ignorance has suffered to creep in, and abide until information and truth and right shall dispel it? If so, law ceases to be a rule of right, and the law of insurance—the prop and stay of commerce, a branch of national and public law—can no longer have invoked for it the language of Cicero: "*Non erit alia lex Romæ, alia Athenis, alia nunc, alia post-hac; sed et omnes gentes et omni tempore una lex et sempiterna et immortalis continebit, usque erit communis quasi magister, et imperator, et omnium deus.*"

If this custom is law, how long is it to continue? If courts make a wrong decision, they can change it, and parties have a right to show the error and insist on its correction; but is every crude custom to be set up, to control courts, and to hold despotic sway over right and law? Suppose that it changes to-morrow; is it then gone? If so, law is very unstable.

It may be said, that the parties might have stipulated for the rule insisted on by the defendants in error, and therefore upon the custom it is to be presumed they did. It is true they might have done so, as parties may stipulate for anything not contrary to public policy; but the question here is, what did they stipulate for, and this cannot be answered by going out of the contract, and establishing *aliunde* something variant from and contrary to it. It is the simple question of changing a written contract by parol proof. The policy says it covers certain losses, rise or fall of market not included, and custom is offered in evidence to show that it does cover rise and fall in the market.

The only other question in the case is, did the stains on the boxes, the tobacco being uninjured, amount to a damage covered by the policy? The policy insures against injury to the tobacco, and the evidence shows that the tobacco itself was not injured.

P. HAMILTON, *contra:*

The first charge assigned for error was correct. Tobacco is well known to be peculiarly liable to injury; its mode of

packing, its nature, and the nature of its trade, are all well known to insurers, who are bound to know every thing appertaining to the trade about which they contract.—1 Arnould on Insurance 42, 66, *et seq.* Being so liable to injury, tobacco is placed in the memoranda attached to the policy. The insurers thus protect themselves from injury, and require the insured to become his own insurer to the extent of fifteen per cent. on the amount of his shipment. In this case, the loss exceeded that amount, and was shown to have been caused by the perils covered by the policy.

As to the mode of ascertaining the damage : The rule adopted by the court below was correct, being founded on the uniform custom in Mobile. The good faith of the insured, in fixing the valuation named in the policy, is not impeached. The policy is a valued or closed policy, in contra-distinction to an open policy.— 1 Arnould 18. In fixing the valuation, it is competent for the assured to calculate the first cost of the goods and the premium of insurance, and to add a fair profit.—1 Arnould 300, 326 ; 13 East 327 ; Stevens & Benecke 1, 2. From this it appears that the valuation fixed in this case was anything but exorbitant or objectionable. A valuation fixed in good faith will never be lightly disturbed ; it is absolutely binding and conclusive, except in cases of fraud or gross over-valuation.—2 Camp. R. 69 ; 1 Sumner's R. 451 ; Stev. & Ben. 7, 38, 39. In cases of open policies, where a loss occurs, the rule is, to ascertain the value of the goods at the port of shipment, and add the cost of insurance.—1 Arnould's Ins. 330. To provide a more perfect indemnity than this affords, the custom of using valued policies was introduced.—12 East 639, 438. It has been held, without the aid of any custom, that losses are to be settled as the court below directed in this case.—4 Howard's Miss. R. 63.

In this case, no question can be made as to the existence of a uniform, well known custom in the port of Mobile, both with assurer and assured, as to the mode of adjusting partial losses under valued policies. The existence of such a custom, and all the requisites to make a custom, were found by the jury ; the contract was made in Mobile. This custom, then, must be taken as a part of the policy, and the parties must be presumed to have made their contract in reference to it.—3 Kent's Com. (7 Ed.) 326, note ; 1 Arnould's Ins. 66, 72, 74, 75 ; Palmer

v. Blackburn, 1 Bing. 61; 1 Duer on Insurance 263 §57, 259, 265. An objection to it cannot be sustained on the ground simply of its being local, for, as between the parties contracting in the port where such uniform custom has prevailed, they will be held cognizant of it, and as dealing with a view to it.—See authorities last above cited; 1 Duer 286. And where the usage is purely local, if notice of its existence be brought home to the parties, it will be held to bind them, and will be treated as part of the contract.—1 Arnould on Ins. 72 *et seq.;* 1 Duer 304; 4 M. & W. 211; 3 Day's R. 346; 9 Wheat. 582; 4 Term R. 206, 216; 10 B. & C. 760; 4 M. & S. 150; 6 Har. & J. 408. And so if the trade be confined to a single port, and the usage is general there, it will be a good custom.—1 Duer 259, 294. Mobile is the only port in this State, and the proof shows a uniform, well established and well ascertained mode of settling such losses at that port.

The rule is well settled in England, that a custom as to the mode of settling a general average loss, at a foreign port of destination, is binding on the underwriters in England.—See cases cited in 1 Duer 247. The books on insurance shows that the custom proven to exist in Mobile is not so limited; it extends much further than to Mobile, and though greatly condemned by foreign authors, may almost be called the American custom. There are four modes in use for the adjustment of partial losses : 1, as a salvage loss, which is the mode adopted in Mobile; 2nd, on difference of sales, without reference to cost; 3rd, on comparison of net proceeds of sales ; 4th, on comparison of gross proceeds of sales. In reference to the first of these Mr. Stevens remarks, that "it is particularly prevalent in the United States," and he attributes its existence here to our ignorance of any other mode. Its recommendation, however, lies in the fact, that it affords to the insured a "mercantile indemnity."

The nature and effect of a custom has been repeatedly considered by this court.—6 Porter 123 ; 3 Ala. 590 ; 12 Ala. 350 ; 12 Ala. 513 ; 10 Ala. 284 ; 7 Ala. 325.

LIGON, J.—The first assignment of error was not insisted upon, either in the argument or brief of the counsel for the appellants. It must, therefore, be considere as waived.—Van

Eppes v. Smith, 21 A. R. 317 ; Cunningham v. Carpenter, 10 A. R. 109.

The second arises upon the second charge given by the court below, in relation to the rule by which partial losses on valued policies of insurance are adjusted by the custom in the city of Mobile.

The evidence fully justified the court in submitting the question of the existence or non-existence of this custom to the jury in the manner in which it is presented by the charge, and in saying to them that, if they found the custom to exist, it must govern their action in assessing the damages.

The general law regulating the assessment of damages under such policies, even if it differed from this custom, must give way to it, if it is shown or may fairly be presumed that the parties contracted in reference to the custom, and not to the general law.

It is conceded that this policy was made in the city of Mobile, and that both the appellant and appellee do business in that city ; and the proof, as shown by the bill of exceptions, is, " that by the custom of insurers and insured in Mobile, partial losses on closed policies are adjusted by paying the difference between the sales price of the injured article, and the price stipulated in the policy." The only legitimate inference from this proof (if indeed the language is not too plain to require an inference to be drawn) is, that this rule was known to and governed the action of all insurers and insured persons in the assessment of damages in cases of partial loss on valued policies, when the contract of insurance was made, and the owner of the goods resided in the city of Mobile.

In the absence of fraud in the valuation in the policy, or in the sales of the damaged article, the parties to this contract are bound by this usage ; and it is shown in this case that both the valuation and sales were fair. Under such circumstances, the insurer will not be allowed to repudiate a custom in reference to which he is presumed to have contracted, and under which the insured had a right to expect that his loss, if any occurred against which he was protected by the terms of the policy, would be adjusted and settled.

To give validity to a usage of this kind, it is not necessary that it should extend to the whole State ; if it is generally

known and acted upon in the port, city or town in which the policy is given, it will be sufficient. In his work on Insurance, Judge Duer uses, in reference to such usages, this language : "The proposition that a usage must be general, in order to bind the parties, refers exclusively to the cases in which the knowledge of the parties and their intention to adopt the usage are inferred merely from the fact of its existence ; but when their knowledge, or intentions, are established by other direct or circumstantial proof, their contract will be governed by the usage, however local or partial, in reference to which it is proved or presumed to have been made. Thus, the use and practice, as between themselves and the assured, even of a single insurance company, will be binding, not only in all cases upon the company, but upon all such persons as have been in the habit of effecting policies in their office. So, by parity of reasoning, a local usage of trade may be binding upon insurers who have frequently made insurances to which the usage would apply; and however local or partial may be the usage, the insurers will be bound, in all cases, when the intention to follow it was expressly communicated, and the policy was founded upon that representasion."—1 Duer on Ins. 203 § 57.

Again ; the same author, in speaking of general usages as applicable to the persons who recognize and adopt them, and to the ports in which they prevail, concludes his remarks with this expression : " It is not meant, for example, to deny that the insurers are bound in all cases by a usage generally followed and notorious, of the port in which they reside, however widely it may differ from the general usage of other ports engaged in the same trade. Their residence, where the usage, although local, is otherwise valid, would doubtless be deemed sufficient evidence of their knowledge."—1 Duer on Ins. 261 § 55, and authorities there cited.

If the usage is purely local, still, if notice of its existence is brought home to the parties, they will be bound by it, and unless otherwise provided in the policy itself, it will form a part of the contract of insurance, and be looked to by the courts in settling rights arising under it.—1 Arnould on Ins. 71 § 43, and authorities cited.

In this case, the usage referred to in the charge of the court is shown to be not only general, but universal, both with insu-

^rers and insured in the city of Mobile; for the language of the bill of exceptions, setting out the evidence, is subject to no other legitimate construction; and as the parties do business in that city, and this policy was effected there, they must be presumed to have known of its existence, and to have contracted in reference to it.

This view of the case is decisive of it, and renders it unnecessary for us to examine it in all the aspects in which it has been presented in the briefs and arguments of counsel.

It is insisted, however, that the custom is repugnant to the terms of the policy, because the policy contains a stipulation that unless the damage to the tobacco exceeds 15 per cent., then the insurers are to pay nothing; and that under the calculation required by the custom, no per centum of loss can be ascertained. This by no means follows; for, when the damaged sales are subtracted from the value in the policy, the rate per cent. which the sum so obtained bears to the sum in the policy may be ascertained by a mere arithmetical calculation, and if it exceed the rate of 15 per cent., then the insurers must pay the whole loss; if it be less than that rate per cent., they pay nothing, inasmuch as the owners were their own insurers if the damage was not greater than that sum.

There is no error in the record, and the judgment must be affirmed.