# East Tennessee, Virginia and Georgia Railroad Company *v.* Johnston.

*Action by Shipper against Railroad Company for Recovery of Damages for Injuries to Cattle while in Transit.*

1. *Common carrier's liability for cattle received by it for transportation; extent of.*—Under the rule adopted in this State, when not modified by special contract, a common carrier, undertaking to transport cattle, assumes the full obligations to furnish safe and suitable vehicles, and an adequate road, and to exercise due care and foresight to guard against loss or injury from external sources; but he does not become an insurer, and his liability does not extend to any damage resulting from the nature, disposition, or viciousness of the animals, or from any intrinsic cause, against which care and foresight could not provide.

2. *Same; when special contracts limiting liability upheld.*—Special contracts made by common carriers with shippers of cattle, restricting and avoiding their liability for the unusual risks peculiar to the transportation of such freight, are maintained and upheld by the courts, when the limitations are just and reasonable, and do not exempt the carriers from liability for any loss or injury caused by their own act or negligence.

3. *Same; adequacy and sufficiency of vehicles furnished.*—In respect to the adequacy of carriage, a railroad company meets its duty and obligation, when it furnishes such as is most in use, and is approved by persons skilled and experienced in the business, as necessary and proper for safe transportation, having in view the kind and nature of the freight; and the omission of any part or, appliance, permanent or usual in the construction or preparation of a car, and which is necessary and proper to its adequacy for the general uses and purposes of railroad transportation, is *prima facie* negligence; but to charge the company with negligence because of the omission of some peculiar, adventitious and temporary preparation, the necessity or propriety must be shown by extraneous evidence.

4. *Same; omission to "bed" car; effect of.*—When the liability of the railroad company is not modified by contract, and he undertakes the transportation of cattle under the common law liability for safe delivery, it can not be affirmed, as matter of law, that the failure to 'bed" a car for the transportation of cattle with straw or other material, is negligence *per se;* but if it is shown that such a course is usual and customary, and is such a precaution as a prudent, competent, and faithful man, experienced in the business, would take, the company will be responsible for any injury caused by its omission in this regard.

5. *Same; special contract construed in respect to bedding car.*—Where a shipper of cattle contracts with a railroad company for the use of a car for the transportation of cattle, having reference to the cars in use on the defendant's road, in the absence of any stipulation for any particular kind of car, the extent of the company's obligation is to fur-

[East Tenn., Va. & Ga. R. R. Co. v. Johnston.]

nish a safe, serviceable and adequate car, adapted to the use intended; and the shipper retaining control and charge of the cattle, and assuming the risk and responsibility of loading, his understanding of the contract may be inferred from the fact, that he had provided material for bedding the car; and the company will not be held liable for any loss or injury arising from his fault or neglect in this regard.

6. *Same; when not liable for failure to bed car.*—Hence, the shipper, having assumed, by special contract, the duty of proper storage of his cattle, and having accepted and loaded the car without objection, and with knowledge that it was not bedded, can not hold the company liable for negligence because of a failure to bed the car, or because of the insufficiency of the bedding. In such case, by his contract he virtually agrees that "in respect of the particular transaction, the carrier is not to be regarded as in the exercise of his public employment, but as a private person, who incurs no responsibility beyond that of an ordinary bailee for hire, and answerable only for misconduct or negligence."

7. *Usage as an element of contract; when admissible.*—A usage or custom, to be admissible in explanation of the terms of a contract which are ambiguous or doubtful in signification, must be reasonable, must not contravene or displace any of the general principles of statutory or common law, or vary or contradict the express terms of the contract, and must be brought home to the knowledge of the party sought to be charged, either by proof of actual notice, or by proof of its existence sufficiently long to raise a presumption of knowledge.

8. *Same; when admissible to interpret contract between common carrier and shipper of cattle.*—When a special contract is entered into between a railroad company and the owner of cattle, for the transportation of the cattle, and it is silent as to the kind of car to be furnished, and as to any special preparation of the car, and, while providing that the shipper shall retain control and charge of the cattle, and assume the risk and responsibility of loading, it is also silent as to what special duties were undertaken by him in these particulars, evidence of a usage or custom, by which he is to bed the car, known to him, and upon which he had acted in making previous shipments, is admissible for the purpose of interpreting and explaining the intention, meaning and understanding of the parties in making the special contract.

9. *Special contract for transportation of cattle; when not unreasonable.*—There is nothing unreasonable in the provision of a special contract made by a railroad company for the transportation of cattle, by which the owner assumes the duty of loading, transferring and unloading the cattle; and for any injury caused by overloading, or other improper loading, the company, if without fault or negligence on its part, is not liable.

10. *Same; when unreasonable and void.*—But a clause in such contract, exempting the company "from all other damages incidental to railroad or steamboat transportation, which shall not be established to have been caused by the *gross* negligence or delinquency of any of the officers or agents of the said railroad or steamboat companies," relieving, as it seeks to do, the company from all negligence less than gross, is unreasonable, and can not be maintained.

11. *Same; burden of proof when injury shown.*—When there is a contract between a common carrier and shipper, limiting the former's liability, the injury having occurred, the burden of proof is on the carrier to show, not only that the cause of the injury is within the exception, but that the injury did not result from the carrier's negligence.

12. *Duty of railroad company in assigning cars in making up trains.*—While, in making up a train, large discretion must be allowed a railroad company in assigning cars to different positions, it is, nevertheless, the duty of the company, having regard to the nature and character of all kinds and classes of freight received by it for transportation, to assign a car loaded with freight of a particular nature such position, so far as may

[East Tenn., Va. & Ga. R. R. Co. v. Johnston.]

be consistent with the safety and interests of other shippers, as will cause the least exposure to danger.

13. *Same.*—Although a railroad company may have, consistently with its duty to other shippers, placed a car loaded with cattle at a greater distance from the engine, yet, if the injury suffered was not caused by the proximity of the cattle to the engine, the company is not liable therefor, in the absence of negligence on its part causing the loss.

14. *Measure of damages for injuries to cattle shipped on railroad; what is.*—The measure of damages for injuries to cattle shipped by railroad, resulting in death, is the market value of the cattle at the place of destination, less the expense of transportation, although such place is beyond the terminus of the company's road, and it was not liable for injury occurring beyond its terminus.

APPEAL from Marengo Circuit Court.

Tried before Hon. WM. E. CLARKE.

This was an action by Charles P. Johnston against the East Tennessee, Virginia and Georgia Railroad Company, a corporation controlling and operating a railroad in this State, for the recovery of damages for injuries received by plaintiff's cattle, which had been delivered to the defendant, at Demopolis, Alabama, a place on the line of said road, for transportation, as alleged in 'the complaint, to New Orleans, Louisiana, and which are alleged to have been injured *in transitu.*

On the trial evidence was introduced by the plaintiff tending to show that, on 12th December, 1883, he delivered to the defendant at Demopolis, for shipment to New Orleans, thirty head of cattle; that six of the cattle were injured in transit from Demopolis to Meridian, Mississippi, the terminus of defendant's road, and from such injuries they afterwards died; that it was "necessary and proper that a car for the transportation of cattle should be bedded, as the absence of bedding caused the floors of cars to become very slippery, and thus rendered stock more liable, than with bedding they would be, to fall down, and made it more difficult for them to stand on their feet;" that a car could be properly and sufficiently bedded with saw-dust, cotton-seed, corn-stalks, or pine-straw, a wagon load being sufficient; that more risk accompanied the shipment of cattle in the absence of such bedding than when cars were furnished with it; that plaintiff had provided a sufficient quantity of saw-dust for the purpose of bedding the car in which the cattle were to be shipped, but was prevented from properly doing so by the position in which the car was placed on defendant's side-track, on arrival of the train, it being some distance from the chute at which cattle had to be put on the cars, and near which he had deposited his saw-dust; that the conductor did not place the car at the chute until a short time before leaving, and declined to wait until all the saw-dust could be put in the car; that the car, being insufficiently bed-

ded, was placed third from the engine in a train of fourteen cars, although plaintiff insisted that the conductor should place it in the rear of the train, and the place in which it was placed was more dangerous than a position in the train further from the engine; that the cattle were repeatedly down in the car on the way from Demopolis to Meridian, thereby receiving the injuries which caused their death; and that the value of the cattle so injured, at Meridian, was $151.

The defendant read in evidence a contract executed by it and the plaintiff on the day of shipment, reciting the delivery of the cattle to defendant by plaintiff, consigned to him at New Orleans, to be transported by the defendant "to its freight station at Meridian, ready to be delivered to, and unloaded by the consignee, or upon his order, or to such company or carrier, if the same is to be forwarded beyond said station, whose line may be considered a part of the route to the destination of said stock;" and that it was "distinctly understood that the responsibility of" the defendant "and connecting lines, as common carriers, shall cease at the end of the road, upon" stated conditions, of which those material to the points decided are set out in the opinion. The defendant also introduced evidence tending to show that the car in which the cattle were shipped was placed at Demopolis an entire day before shipment, and the train was delayed about two hours in loading them; that the car was sufficiently bedded, and was placed in or near the middle of the train; that the plaintiff superintended the loading of the cattle, and was told at the time that he was putting too many in the car; that the plaintiff made no complaints during the trip to any of defendant's agents; and that about thirty minutes after the arrival of the train at Meridian, the car containing the cattle was delivered to the connecting line, the cattle being "up and in good condition."

On the cross-examination of the plaintiff, who was examined as a witness in his own behalf, the defendant offered to prove by him, (1) that it was usual and customary for persons, who shipped cattle over defendant's road, to bed cars furnished for transportation of cattle, and that the bedding of such cars had never been required of the defendant; and (2) that the plaintiff had, before said shipment, shipped other cattle over defendant's road, and, in doing so, he had bedded the cars furnished him for that purpose, without objection, and that he had not given defendant notice that, on this occasion, he would require defendant to bed the car. The court separately refused to allow the offered proof to be made; and to these rulings the plaintiff duly excepted.

The bill of exceptions purports to set out all the evidence, the material portions of which are stated above; and on this

evidence the court charged the jury, *ex mero motu*, as follows: 1. "If the jury believe from the evidence that the cattle were injured on defendant's road, and delivered at Meridian in a damaged condition, it is the duty of the railroad to relieve itself of negligence by proof, and the burden in this respect is on it." 2. "If the jury believe from the evidence that the bedding of a car was necessary and proper for the safe transportation of cattle, then it was the duty of the defendant to bed the car it furnished the plaintiff." 3. "It was the duty of the defendant to see that the stock were not overloaded in said car; and a stipulation in said contract, by which the plaintiff takes the risk of loss from said cause, is unreasonable and void."

The court refused, at the defendant's written request, to give the following, among other charges: (1) "That if the jury believe the evidence, they will find for the defendant." (2) "If the jury believe from all the evidence that the plaintiff suffered loss from the matters complained of in this suit, they can give him no damages, unless they further believe from all the evidence that such loss was occasioned by the negligence of the defendant; and the burden of proof as to negligence is on the plaintiff in this case." (3) In substance, that if the jury should find for the plaintiff, the utmost extent of his recovery would be the difference between the market values of the cattle at Meridian, at the time of their delivery there, in sound condition and in damaged condition; and the burden was on the plaintiff to prove such values. (4) "That under the evidence in this cause, it was not the duty of the defendant to bed the car it furnished the plaintiff for the transportation of his cattle."

The court gave the following charges requested in writing by the plaintiff: 1. "If the jury believe from the evidence that the nearer a car loaded with cattle is put to an engine, the greater the danger to the cattle, and that the train could have been so arranged as to have placed the car in which plaintiff's cattle were loaded at a greater distance from the engine than it was placed, without prejudice to other shippers having the same kind of freight, it was the duty of the defendant so to do; and its failure to do so was negligence; and if the jury further believe that the injury to the cattle was attributable to the nearness of the car to the engine, the defendant is liable for such injury, and the plaintiff is entitled to a verdict." 2. "If the jury believe from the evidence that the cattle were in good order and condition when delivered to defendant at Demopolis, and were injured on defendant's line, between Demopolis and Meridian, the defendant could only discharge itself by showing that defendant and its agents and servants had not been negligent, and had taken that care of the cattle which the nature of the cattle required from the time they were received at De-

[East Tenn., Va. & Ga. R. R. Co. v. Johnston.]

mopolis until they reached Meridian." 3. " If the jury believe from the evidence that the cattle were in good order and condition when received by the defendant, and were injured along the line of the defendant's railroad, the plaintiff is entitled to a verdict, unless the defendant shows that the injury occurred without any negligence or default on the part of its agents or servants." 4. " Negligence is the absence of care and diligence under the particular circumstances of the case ; and it is for the jury to say whether, under the circumstances, the railroad company did all that any ordinary person would have done in taking care of the stock ; and if, from all the circumstances of the case, they believe that the railroad company, or its agents or servants failed to exercise such due care and diligence, they should find a verdict for the plaintiff."

The defendant pleaded the general issue, and also several special pleas, setting up the contract of shipment, and performance on its part ; and upon issues joined on these pleas the cause was tried, the trial resulting in a verdict and judgment for the plaintiff.

To the several rulings in instructing the jury, and in failing to instruct as requested by defendant, above noted, the defendant duly excepted ; and he now assigns the same, with the rulings on the evidence, also above noted, as error.

PETTUS & PETTUS and W. H. TAYLOE, for appellant.

TOULMIN, TAYLOR & PRINCE, contra.

CLOPTON, J.—The increasing requirements of trade and commerce, the growing populousness of different and widely separated sections of the country, and the necessity for speedy transportation, have constituted the carriage of living animals by railway an extensive and important part of the employment of railroad companies. Since such companies have undertaken the transportation of live stock, their liability as such carriers has been the subject of frequent consideration and adjudication, and the decisions are not in harmony. The rule adopted in this State, when not modified by special contract, is, that " the common-law liability of a carrier for the delivery of live animals is the same as that for the delivery of merchandise. Upon undertaking their transportation he assumes the obligation to deliver them safely against all contingencies, except such as would excuse the non-delivery of other property."—S. & N. Ala. R. R. Co. v. Henlien, 52 Ala. 606. Under this rule the carrier, undertaking to transport cattle for those who choose to employ him, assumes the full obligation to furnish safe and suitable vehicles, an adequate road, and to

exercise due care and foresight to guard against loss or injury from external sources; but does not become an insurer, and his liability does not extend to any damage resulting from the nature, disposition or viciousness of the animal, or from any intrinsic cause, against which care and foresight could not provide.—*Clark v. Ro. & Sy. R. R. Co.*, 14 N. Y. 570; 3 Am. & Eng. R. R. Cas. 489; *Goldey v. Penn. R. R. Co.*, 30 Penn. St. 246; *Welsh v. P., F. W. & C. R. R. Co.*, 10 Ohio St. 73.

To avoid liability for the unusual risks, peculiar to the transportation of such freight, it has become customary for carriers to make special contracts restricting their liability. Such contracts, when the limitations are just and reasonable and do not exempt the carrier from liability for any loss or injury caused by his own act or negligence, are maintained. A special agreement was made between the plaintiff and defendant, by which, in consideration of a reduced price, and a free passage to the owner or his agent on the train with the stock, the owner assumed designated risks, and the defendant was released from any liability for damage resulting therefrom. These limitations, so far as are material in the consideration of the questions presented by the record, are as follows: "Said owner and shipper do hereby assume and release said railroad from all injury, loss and damage, or depreciation, which the animals or either of them may suffer in consequence of either of them being weak, or escaping or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire or the burning of any material, while in the possession of the company, and from all other damage incidental to railroad or steamboat transportation, which shall not be established to have been caused by the gross negligence or delinquency of any of the officers or agents of said railroad or steamboat companies. And it is further agreed, that said owner or shipper is to load, transfer and unload, said stock at his or their own risk. And it is further agreed that, in case of accident to, or delays of time from any cause, the owner and shipper is to feed, water and take proper care of the stock at his own expense." At the foot of the contract is a memorandum, that the plaintiff is in actual charge of the stock.

The contract does not relieve the defendant from the duty to supply safe and suitable vehicles. In respect to the adequacy of carriage, a carrier meets his duty and obligation when he furnishes such as is most in use, and is approved by persons skilled and experienced in the business, as necessary and proper for safe transportation, having in view the kind and nature of the freight. The omission of any part or appliance, permanent or usual in the construction or preparation of a car, and which

[East Tenn., Va. & Ga. R. R. Co. v. Johnston.]

is necessary and proper to its adequacy for the general uses and purposes of railroad transportation, is *prima facie* negligence. But to charge the carrier with negligence, because of the omission of some peculiar, adventitious and temporary preparation, the necessity or propriety must be shown by extraneous evidence. We can not affirm, as matter of law, that the failure to bed with straw or other material a car for the transportation of cattle is negligence *per se*. If, however, it were shown that to bed the car in such cases is usual and customary, and is such a precaution as a prudent, competent and faithful man, experienced in the business, would take, the carrier will be responsible for any injury caused by omission in this regard. This is the rule when the liability of the carrier is not modified by contract, and when he undertakes the transportation of cattle under the common law liability of safe delivery.

The charge given by the court asserts, on the hypothesis stated, that it was the duty of the defendant to bed the car *furnished the plaintiff*. The instruction should be considered in connection with the special agreement. This contract was for the use of a car for the transportation of cattle—a hiring of the car,—having reference to the cars in use on the defendant's road. There was no stipulation for any particular kind of car. The extent of the obligation of the defendant was to furnish a safe, serviceable and adequate car, adapted to the use intended. The plaintiff retained control and charge of the cattle, and assumed the risk and responsibility of loading. His understanding of the contract may be inferred from the fact that he had provided material for bedding the car. The defendant will not be held liable for any loss or injury arising from the fault or neglect of the plaintiff.—*Kimball v. Rut. & Bur. R. R. Co.* 26 Vt. 247.

When the car was delivered to the plaintiff, he knew it was not bedded, and accepted it without objection. He should have been allowed a reasonable opportunity to bed it, if bedding is necessary and proper. But after having assumed, by the special contract, the duty of the proper storage of his cattle, and after having accepted and loaded the car without objection, the plaintiff can not hold the defendant liable for negligence because of the insufficient bedding of the car. "The owner, by entering into the contract, virtually agrees, that in respect to the particular transaction, the carrier is not to be regarded as in the exercise of his public employment, but as a private person, who incurs no responsibility beyond that of an ordinary bailee for hire, and answerable only for misconduct or negligence."—*New Jer. St. Nav. Co. v. Mer. Bank*, 6 How. 344; *Chi. & N. W. R. R. Co. v. Van Dresar*, 22 Wis. 511; *Har-*

*ris v. No. In. R. R. Co.*, 20 N. Y. 232; *Shoemaker v. Kingsbury*, 12 Wal. 369.

In this connection may properly be considered the admissibility of the proposed evidence of a usage or custom in respect to bedding cars. Evidence of usage or custom will not be admitted when it contravenes or displaces any of the general principles of statutory or common law, or varies or contradicts the express terms of a contract, verbal or written. It may be regarded as settled, that the extent of the liability of a common carrier may be regulated or modified by a usage of the particular business, unless its effect is to exempt the carrier from responsibility for his own misconduct or negligence. Where there is an express contract, parol evidence of a usage is admissible to explain terms ambiguous or doubtful in signification, or from which to infer the intention, understanding and agreement of the parties, and to incorporate a stipulation or element, wherein the contract is silent; in such case, the usage or custom becomes a part of the contract.—*Barlow v. Lambert*, 28 Ala. 704.

" The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it."—*Barnard v. Kellogg*, 10 Wall. 383. In *Mont. & Eu. R. R. Co. v. Kolb*, 73 Ala. 396, it was held in respect to delivery of goods for transportation, that " proof of a contract and habitual practice and usage of the carrier to receive the goods when they were deposited for him in a particular place, without special notice of such deposit, is sufficient to show a public offer by the carrier to receive goods in that mode, and to constitute an agreement between the parties, by which the goods, when so deposited, shall be considered as delivered to him without any further notice," although such usage was contrary to the established regulation of the company.—*Knox v. Rives, Battle & Co.*, 14 Ala. 249.

The usage must be reasonable, and if there is no positive evidence that it is known to one of the parties, it must have been established and acted on generally, and sufficiently long to raise a presumption of its knowledge; but if it is personally known, the period of its duration is immaterial. When its existence is known, it constitutes an element of the contract, and will be considered by the court in adjudicating the rights of the parties.—*Fulton Ins. Co. v. Milner*, 23 Ala. 420; 1 Smith's Lead. Cas. 934. The special agreement between the plaintiff and defendant is silent as to the kind of car to be furnished,

[East Tenn., Va. & Ga. R. R. Co. v. Johnston.]

or as to any special preparation of the car for the transportation of cattle, or as to what special duties were undertaken by the shipper in assuming to load and take charge of the cattle during the carriage. Evidence of a usage or custom, by which the shipper is to bed the car, known to him, and upon which he had acted in making previous shipments, is admissible for the purpose of interpreting and explaining the intention, meaning and understanding of the parties in making the special agreement.

A drover of cattle, presumably, is more acquainted with their habits, tempers, and viciousness, and the proper mode of management, than the agents and servants of the carrier, and has a better understanding of the manner of loading. so as to guard against the risks of improper loading. Care and vigilance are requisite in transporting live animals by a mode of conveyance so opposed to their instincts, and calculated to excite their fears. The safety of the cattle, and the interests of the owner suggest the propriety of his undertaking the duty and burden of loading, transferring, and unloading, and retaining actual charge. There is nothing unreasonable in the provision of the contract, by which the owner assumed to load, transfer and unload. For any injury caused by over, or other improper loading, the defendant is not liable, if without fault or negligence on its part.—*Squire v. N. Y. Central R. R. Co.*, 98 Mass. 239; *Kimball v. Rut. & Burl. R. R. Co.*, 26 Vt. *supra*.

A carrier can not, by contract, relieve himself of the degree of care and diligence exacted by the common law. Any want of such care and diligence is negligence. He can exempt himself only from liability for loss or injury, not caused by his own or his servant's negligence. The clause of the contract exempting the defendant "*from all other damages incidental to railroad or steamboat transportation, which shall not be established to have been caused by the gross negligence or delinquency of any of the officers or agents of the said railroad or steamboat companies*," is unreasonable, and can not be maintained. The exception relieves the defendant of all negligence less than gross. An injury having occurred, the *onus* of proof is on the defendant to show, not only that the cause is within the exception, but that it was without negligence on the part of the defendant.—*S. & N. Ala. R. R. Co. v. Henlien*, 52 Ala. 606; *Steele & Burgess v. Townsend*, 37 Ala. 247.

A carrier owes equal duty to all persons, who choose to employ him to transport freight. He is under no obligation to give one a preference over others. In making up a train, large discretion must necessarily be allowed the company in assigning cars to different positions. It is, nevertheless, the

[Arrington v. Morgan.]

duty of the carrier to assign a car, loaded with freight of a particular nature, such position, so far as may be consistent with the safety and interests of other shippers, as will cause the least exposure to danger—not of shippers exclusively of the same kind of freight, but having reference to the nature and character of all kinds and classes of freight being transported. Although the defendant might have, consistently with its duty to other shippers, placed the car at a greater distance from the engine, if the injury was not caused by its proximity thereto, the defendant is not liable for such injury, if there was no negligence on its part causing the loss. There does not appear to be any evidence, on which to predicate the first instruction given at the request of the plaintiff, and for this reason the charge should have been refused; but under our rulings, giving an abstract charge, if it asserts a correct legal proposition, is not a reversible error.

The cattle were consigned to New Orleans. The measure of damages is the market value of the cattle at the place of destination, less the expense of transportation, although the defendant was not liable for any injury occurring beyond the terminus of its road.—*S. & N. Ala. R. R. Co. v. Wood*, 72 Ala. 451.

Reversed and remanded.