BETTS and another vs. The FARMERS' LOAN AND TRUST COMPANY.

RAILROADS: *Liability as carriers for injuries to cattle: Right to make special contract: Certain acts of officers not evidence of an admission of negligence.*

1. Where the owner of cattle shipped by railroad (or his agent), who undertook to put them on the car, knew that the door of the car was in an unsafe condition, and neglected to inform the station agent, who was ignorant of the fact, he could

not recover for injuries received by the cattle in escaping from the car in consequence of such defect.

2. A letter from the assistant superintendent of the road to the station agent relieving him of his position on the ground of negligence in permitting such car to leave his station with the door in such unsafe condition, was not evidence of an admission of negligence by defendant.

3. A common carrier may contract that the owner of *live stock* shall assume all risk of damage from whatever cause, in course of transportation.

4. Whether such carrier can enter into similar valid stipulations in regard to other kinds of property, not decided here.

APPEAL from the Circuit Court for *Walworth* County.

Action for injuries to stock while being carried over the Racine and Mississippi Railroad, then operated by defendant. The complaint alleges that the injuries were caused by defendant's negligence in carrying the cattle in a car with defective and imperfectly fastened doors, which were thrown open by the motion of the car, so that the cattle escaped. The contract under which the cattle were shipped contained the following provisions: "The line will not assume any liability over one hundred dollars, on horses and valuable live stock, except by special agreement. Agents are not allowed to receive and ship such valuable horse or other animal until a contract or release is signed by the owner or shipper thereof." [Date] "Received of *G. Betts & Co.*, this day, three cars containing hogs and cattle, 'live,' to be delivered at Milwaukee station at special rates. * * * In consideration of which, * * * it is hereby mutually agreed that said company shall not be liable for loss in jumping from the cars, delay of trains, or any damage said property may sustain, except such immediate damage to the animals as may result from a collision of the train, or when cars are thrown from the track in course of transportation. To be fed and taken care of by the owner." [Signed by the station agent and the plaintiffs.] One Taylor, for the plaintiffs, testified that he loaded the cattle for them at Springfield station, being then in their employ; that several days before they were shipped, he told Cary, the agent of the road,

that he wanted grain cars and a stock car [the former for hogs of the plaintiffs, to be shipped at the same time, and the latter for cattle.] Cary told him they would not give a stock car, but he could take the grain cars. He took for the cattle the largest grain car, no one pointing it out to him. He left the south door of the car open, but nailed bars across the doorway on the inside. He then put into that car twenty head of cattle and six hogs, by the north door. When he came to close the door, he discovered that the pin and chain to fasten it were gone. He then tried to fix that doorway as he had fixed the one on the south side, but could not do so to his satisfaction, because it was so dark he could not see to drive the nails, and the car was so full he could not get in. He therefore nailed up a strip "behind" the door, to keep it from sliding. When he left the car, he thought it was safe. It appears from the evidence that when the train arrived at Racine Junction, the north door above referred to was gone, and seven head of the cattle had escaped through that doorway, and received the injuries complained of. The strip nailed on by Taylor to hold the door was still there. No one was employed by plaintiff to accompany the cattle, and one of the plaintiffs testified that it was not customary for owners to send any one for that purpose. Mr. Cary, then the station agent at Springfield, testified that the plaintiffs and Mr. Taylor called on him for stock cars to ship said cattle, &c., several days before the shipment, and he telegraphed for them repeatedly to the assistant superintendent, but could not get any; that he saw the grain car in question, after it was loaded with the cattle, and it "looked all right:" that he saw that the north door was closed, but "did not see how it was fastened on the inside;" that on the following day he received a telegram from the assistant superintendent of the road, as follows: "Find the men who own cattle and hogs just sent in, and have them come in at once. Pass them, and tell them the cattle are part of them along the track. They jump-

ed out: have them drive them in;" that the next day he received a letter from the assistant superintendent of the road, as follows: "RACINE, Nov. 26th, 1864. L. CARY, Esq.: The bearer, F. Daggett, will relieve you as agent at Springfield. The loss of chest some time since, together with your allowing those stock cars to leave your station without the doors being properly fastened, is sufficient evidence of inattention to business on your part to render a change imperative. R. A. KNAPP, Ass't Supt." The telegram and letter were received in evidence against defendant's objection.

There was conflicting evidence as to whether the car was loaded with a larger number of animals than was customary or prudent; and also as to whether it would have been practicable, with a proper load, to have shut down the "inside grain door," on the north side of the car, and so to have rendered the cattle secure.

The defendant asked the following among other instructions: "2. That the defendant had the right to make rules and regulations, and a special contract for the transportation of the stock in question, limiting its liability as a common carrier; and if plaintiffs entered into a special contract in writing, with the defendant's rules and regulations printed over said contract, for the transportation of the stock in question; and if, at the time of making said contract, plaintiffs had knowledge of such rules and regulations, and assented thereto, then such rules and regulations must be taken to have been accepted by them as part of the contract, and they are bound thereby;" which the court refused to give except with the following qualification: "except as to damages occasioned by the negligence or misconduct of the defendant." "3. If plaintiffs and defendant entered into the contract stated in the last instruction, for the transportation of the stock in question, plaintiffs cannot recover against defendant as a common carrier, unless the loss occurred from a collision of trains, or from the throwing of cars

from the track while in course of transportation." " 4. By the terms of the contract in evidence, defendant did not assume any liability for damage to the stock to an amount exceeding one hundred dollars; and if plaintiffs entered into said contract with full knowledge of its terms, they cannot recover damages exceeding one hundred dollars, with interest from the commencement of the action." Both these instructions were refused. The court then instructed the jury as follows: " 1. That defendant was bound to furnish the plaintiffs, upon reasonable notice, suitable cars to transport their cattle, and all damages resulting to plaintiffs from a failure to do so, might be recovered by them, unless their own negligence was the proximate cause of the damage; and this notwithstanding the attempt to limit the defendant's liability by special contract. 2. That a failure to provide suitable cars after reasonable notice, would be an act of negligence, from the consequences of which defendant would not be relieved by the contract between the parties. 3. That if plaintiffs overloaded the car, and this caused the accident, they could not recover. 4. That the contract required plaintiffs to load the car, not to close and secure it when loaded; that this was defendant's duty, but if plaintiffs undertook to do it themselves, they thereby relieved defendant from this duty, and were bound to use all the ordinary means provided by the defendant to close the car securely; but if the car furnished required an extraordinary or unusual amount of labor or precaution to render it safe for the transportation of cattle, it was still the duty of defendant to see that it was properly secured."

Verdict for the plaintiff, which the court refused to set aside; and the defendant appealed from a judgment upon the verdict.

*Fuller & Dyer*, for appellant, to the point that the telegram and letter to Cary were erroneously admitted in evidence, cited A. & A. on Corp., § 309; *M. & M. R. R. Co. v. Finney*, 10 Wis., 388; *City Bank of Baltimore v. Bateman*, 7 Har. & John., 104;

*Stewart v. Huntingdon Bank*, 11 Serg. & R., 267 ; *Atlantic Ins. Co. v. Conard*, 4 Wash. C. C., 663, 667 ; *Kemp v. Baltimore Fire Ins. Co.*, 2 Gill & J., 108 ; *Grafton Bank v. Woodard*, 5 N. H., 301 ; Story on Ag. (2d ed.), § § 135–7 ; *Thallhimer v. Brinckerhoff*, 4 Wend., 394 ; *Fairlie v. Hastings*, 10 Ves., 123 ; *Fairfield Co. Turnpike Co. v. Thorp*, 13 Conn., 173. 2. As to the right of the defendant to limit its liability as a common carrier by special contract, they cited 4 Burr., 2301 ; 1 Starkie's Rep., 186 ; 2 Taunt., 271 ; 8 Mees. & W., 443 ; *N. J. Steam Nav. Co. v. Merch. Bank*, 6 How. (U. S.), 382 ; *Dorr v. N. J. Steam Nav. Co.*, 1 Kern., 485 ; *Davidson v. Graham*, 2 Ohio St., 131 ; *Merc. Mut. Ins. Co. v. Chase*, 1 E. D. Smith, 115 ; *Nevins v. Steamboat Co.*, 4 Bosw., 233 ; 6 Watts & S., 495. 3. Counsel also contended that the fourth instruction given was erroneous, in holding that the contract did not require the shippers to close and secure the car after loading it.

*Winsor & Smith*, for respondents :

1. "Declarations and admissions of agents or trustees of a corporation in their official capacity are evidence against those whom they represent, if made in the regular course of their business." *Magill v. Kauffman*, 4 S. & R., 317. See also *Hough v. Doyle*, 4 Rawle, 294 ; *M. & M. R. R. Co. v. Finney*, 10 Wis., 391. 2. The second and third instructions asked by defendant were properly qualified so as to leave to the jury the question of negligence and misconduct on defendant's part. 3. As a common carrier the defendant was bound to receive and transport the stock in question for such special rates as could be agreed on, and to furnish suitable vehicles for the safe and convenient transportation, and to use due care therein, notwithstanding the contract. *Camden & Amboy R. R. Co. v. Baldauf*, 16 Pa. St., 67 ; *Sage v. R. R. Co.*, 31 Me., 228 ; *Swindler v. Hilliard*, 2 Richardson, 286 ; *Dorr v. N. J. Steam Nav. Co.*, 4 Sandf., 136 ; *S. C.*, 1 Kern., 485 ; *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 How. (U. S.), 344 ; *Slocum v. Fair-*

*child*, 7 Hill, 292; *Camden & Amboy R. R. Co. v. Burke*, 13 Wend., 628–9; Pierce Am. R. R. Law, 462–3; Edwards on Bailm., 468–9, 574–5; *Atwood v. Reliance Transp. Co.*, 9 Watts, 87; *Reno v. Hogan*, 12 B. Mon., 63; *Parsons v. Monteath*, 13 Barb., 360.

DIXON, C. J. The judgment is erroneous, and must be reversed.

1. The letter and telegram from Knapp, the assistant superintendent of the railroad, to Cary, the station agent at Springfield, ought not to have been received in evidence. They were instructions from a superior to an inferior agent of the company, having some relation to the affairs in controversy, but not admissions of a kind entitled to be given in evidence. Knapp, the assistant superintendent, was a stranger to the facts in dispute; he took no part in the transaction, and knew nothing about it, and was consequently disqualified from making any admissions which would bind the company in respect to it.

2. The fourth instruction was erroneous. It appears that Taylor, the agent of the plaintiffs, who put the cattle into the cars, knew the weak and unsafe condition of the car door, and that he did not inform the station agent of the company, to whom it was unknown. Taylor fastened the door by such means as were at hand, and so that he considered it safe. If, after this, he had wished to hold the company responsible for any loss or damage which might arise from that cause, he should have notified the station agent of the unsafe condition of the door, so as to have given him an opportunity of securing it. The jury should have been so instructed.

3. The second and third instructions asked by the counsel for the company should have been given as asked. The limitation of the liability of the company relates exclusively to live stock shipped over its road. As to this species of property we think it competent for the carrier to contract that the owner

shall assume all risk of damage or injury from whatsoever cause happening in the course of transportation. This is a new kind of carrying, and such as was almost wholly unknown before railroads came into use. It is attended with peculiar risks and responsibilities, and it seems very reasonable that the carrier should be at liberty to contract as he pleases, without regard to the rules of the common law as formerly understood and applied in some of the cases. It is more than doubtful whether a common carrier by railroad can be compelled to receive such property at all for conveyance, unless by statute. On this account a distinction seems to be taken in several of the English cases between this and other kinds of property; and we think it is well taken. *Carr v. The Lancashire and Yorkshire Railway Company*, 14 Eng. Law & Eq., 340; *Chippendale v. The Same*, 7 id., 395; *Wise v. The Great Western Railway Company*, 36 id., 574; *Austin v. The Manchester &c. Railway Co.*, 11 id., 506. In saying that we think the distinction is well taken, we mean no more than that it was competent for the company, by express contract, to limit its liability in all respects with reference to this kind of property. We intimate no opinion as to whether it is or is not competent for a common carrier to make similar stipulations with regard to other kinds of property, or so as to protect himself against loss or damage arising from his own negligence, or the negligence or omissions of his agents or servants.

4. The fourth instruction asked by the counsel for the company was properly refused; because the limitation of the liability of the company to $100, except by special agreement, applies only to horses and stock of extraordinary value. The stock in question was not of that kind.

*By the Court.*—Judgment reversed, and a new trial awarded.