FEBRUARY TERM, 1868. 511

Chicago and Northwestern Railway Company vs. Van Dresar and another.

---

## CHICAGO AND NORTHWESTERN RAILWAY COMPANY vs. VAN DRESAR and another.

EVIDENCE: *Shipper and carrier—Waiver of rights under contract.*

1. In an action against a railway company for injuries received by cattle in transportation, where it appeared that they were to be, and were, loaded by the owner, and it did not appear that he objected to the car furnished for that purpose, it was error to permit him to testify in his own behalf, that some other kind of car was better for that purpose.

2. Where the contract on which cattle were carried provided that the owner was to take care of them at his own expense and risk, and assume all risk of injury that they might do to themselves or each other, mere proof that the company had been in the habit of conveying cattle for the plaintiffs without their presence upon the train did not tend to show a waiver of this part of the contract.

ERROR to the Circuit Court for *Fond du Lac* County.

*Van Dresar* and *Bartlett* shipped thirty-two head of cattle from Fond du Lac to Chicago, by the C. & N. W. Railway. *Bartlett* attended to loading the cattle, fifteen of which were put in the only open cattle car that the company had at the depot, and seventeen in a box car. It does not appear that *Bartlett* made any objection to the use of the latter. The contract signed by both parties stated that the company was not to be liable " for any damage said property [might] sustain, except such as [might] result from a collision of trains, or when cars [were] thrown from the track in course of transportation;" and that the cattle were " to be fed and taken care of by the owner." The " printed tariff " of the company is also declared to be a part of the contract; and a portion of the same, printed on the same sheet with said contract, provides that " when live stock is shipped, the owner or his agent is to feed, water and take care of his stock at his own expense and risk, and is to assume all risk of injury or damage that the animals may do to themselves or to each other, or which may arise from delay of trains."

The cattle were put on the train about nine o'clock A.M., and in the usual course of events would have reached Chicago by five or six o'clock the next morning. Plaintiffs did not send any person along in charge of them. When the train reached Bellville station, a large proportion of those in the box car were found fallen down and piled upon each other, so that the company's agents thought it necessary, in order to save them from further injury, to switch

off the car, and get them out, and enclose them in a yard adjoining its road, used for loading cattle at that station. During the night some of the cattle escaped from the yard, and three of them were killed and another injured by a train on said road. The action below was brought by *Van Dresar* and *Bartlett* for the damages thus sustained, which are alleged in the complaint to have been caused by the negligence of the company. There was contradictory evidence as to whether the yard at Bellville station was surrounded by a substantial fence. The evidence tended to show that one of the cattle was wild and unruly, and broke down the fence, and after escaping broke another fence; but there was a conflict of evidence as to plaintiffs' knowledge that the animal was unruly. It appeared that plaintiffs had previously, at different times, shipped cattle on this road. *Van Dresar*, as a witness for them, was asked, "Had it been usual for you to go with the stock shipped over defendant's road?" and, an objection to the question being overruled, answered in the negative. *Question:* "In the shipment of stock from Fond du Lac to Chicago, did they require any watering or feeding on the way?" Objection overruled. *Answer:* "I never considered it necessary, and never did it." *Bartlett*, for the plaintiffs, was permitted against objection to testify that the open car is best for cattle, and why.

The instructions given and refused, so far as important here, are stated in the opinion. Verdict and judgment for the plaintiffs; and defendant sued out a writ of error.

*Campbell McLean* (with whom was *Chas. A. Eldridge*, of counsel), for plaintiff in error.

*Gillett & Pier*, for defendants in error. [No brief.]

Cole, J. We think the question asked the witness Bartlett, as to which was the better car for shipping cattle in,

was improper, and should have been ruled out. This witness was one of the owners of the stock, and himself assisted in loading the cattle on the cars at Fond du Lac. He saw that one of the cars was a box car, but still he saw fit to ship his cattle in it. It does not appear that he made any objection to the kind of car; and if he deemed it unsuitable for the purpose, he should have then insisted upon having an open car. We certainly think, after he had himself aided in loading the cattle upon that car without any sort of objection, that he ought not to be permitted to say that the cattle should have been shipped in some other kind of car. By the express conditions of the contract, the stock was "to be loaded and unloaded, watered and fed, by the owner, and at his risk in all respects, except" as otherwise therein specified. And after having accepted the box car and loaded his cattle in it, we think it is too late for him to say that an open car should have been furnished. *Betts v. Farmers' Loan & Trust Co.*, 21 Wis., 80.

We think the defendant was entitled to have the first instruction given to the jury in terms as asked. That instruction was: "It appears from the contract for the transportation of the cattle, made between the plaintiffs and defendant, that the cattle were to be fed and taken care of by the owners, the plaintiffs in this action; and if you find from the evidence that the plaintiffs neglected this part of the contract, and such neglect contributed to the injury of the cattle, then the plaintiffs are guilty of such negligence on their part as will bar them from recovering in this action." The court gave the instruction with the qualification, "unless the jury find that the defendant waived that part of the agreement." There can be no doubt that by the contract the plaintiffs were to take care of the cattle on the road during their transportation. For one clause of the contract is in the following words: "When live stock

is shipped, the owner or agent is to feed, water and take care of his stock at his own expense and risk, and is to assume all risk of injury or damage that the animals may do to themselves or to each other, or which may arise from delay of trains." This is an important provision of the contract, and there is no evidence in the case from which the jury would have been authorized in finding that the company waived it. The very injury which did happen, in all probability, resulted from the neglect of the plaintiffs to send some one with the cattle to take care of them as they were bound to do. At all events, the company was entitled to have that simple question submitted to the jury upon all the evidence. Of course, it was competent for the company to waive this provision of the contract; but there is not the least evidence that it ever did. And hence it was well calculated to distract the attention of the jury from the real points in the case, by raising the question of waiver, which did not arise upon the evidence. In the general charge, the court likewise, in effect, instructed the jury, that the evidence showed that it had not been the custom of the plaintiffs to go on the train with their cattle; and that it did not appear that the company refused to transport the cattle for that reason; and that if the company had been in the habit of conveying the cattle for the plaintiffs without their presence on the train, the jury might receive this evidence as tending to prove that the company waived that part of the contract in this case, and took on itself the care of the cattle on the way. But we do not suppose it was necessary that the company should refuse to transport the cattle unless some one went with the train to look after them, in order to entitle it to raise this defense. The contract was specific upon the point that the owner was to take care of the stock, and assume all risk of injury which the animals might do to each other while *in transitu*. The circuit judge ruled

that the fact of the company having transported cattle for the plaintiffs without their presence on the train, tended to prove that it had waived this part of the contract in this case.   But as we have already said, we do not think there is any evidence from which the jury would have been warranted in finding that there was a waiver of this part of the agreement.   And if the neglect of the plaintiffs to perform this duty contributed to the injury of the cattle, then it is clear that the company is not liable.

We do not deem it necessary to notice the other points discussed in the brief of the counsel for the company.   The errors already noticed are sufficient to reverse the judgment, and on a new trial the proofs may show a different state of facts.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.