## The Great Western Railway Co. v. Walter H. Hawkins et al.

*Common carriers: Suitable cars: Declaration: Subordinate officers.* Where the contract of a railroad company to transport certain horses, was silent as to the fitness of the cars to be furnished: *held*, in an action for damages, that the company were responsible under their common law liability, though limiting the common law liability in some particulars, for injuries resulting from defective cars.

The obligations of the carrier to furnish suitable cars, fit for a particular purpose, is absolute, without reference to the fitness or fidelity of agents or officers, subordinate or otherwise, unless plaintiff, with notice of the defect, assented to their use.

*Heard May 5. Decided May 12.*

Error to Wayne Circuit.

This was an action brought to recover damages of the Great Western Railway Co. for alleged injuries to certain horses while being transported over their road.

The following is a copy of the declaration:

"For that the said defendant, before and at the time of the delivery of the goods and chattels to said defendant as hereinafter next mentioned, was, and from thence hitherto hath been and now is, a common carrier of goods and chattels for hire, to-wit: from Paris, in the province of Canada, to the city of Detroit, in the United States of America, and as such common carrier the said plaintiffs, on or about the 5th day of May, A. D. 1865, at Paris, aforesaid, caused to be delivered to said defendant, and the said defendant then and there accepted, and received of and from the said plaintiff certain goods and chattels of said plaintiffs, to-wit: nineteen horses of great value, to-wit: of the value of $4,000, to be safely and securely carried and conveyed by the said defendant, from Paris, aforesaid, to Detroit, aforesaid, and there, to-wit: at Detroit, aforesaid, safely and securely to be delivered to said plaintiffs, for certain reasonable reward paid to said defendant in that behalf; and it then and there became and was the duty of said

defendant to take due and proper care of said goods and chattels, and in and about the carriage and conveyance of the same, and the delivery thereof as aforesaid; yet the said defendant, not regarding its duty in that behalf, but contriving and intending to injure said plaintiffs, afterwards, to-wit: on the day and year last aforesaid, and while said goods and chattels were in its possession, and under its control, took so little and such bad and improper care of said goods and chattels, and so carelessly and negligently behaved and conducted itself in and about the carriage and conveyance of the same, and delivery thereof as aforesaid, that said horses, by means of such carelessness and negligence, and bad and improper care, were greatly gored, lacerated, bruised, and otherwise injured and damaged. to-wit: on the day and year aforesaid, and while in the custody of defendant, as aforesaid.

And whereas, also, afterwards, to-wit: on the day and year aforesaid, from Paris to Detroit, aforesaid, the said defendant, as such common carrier as aforesaid, for certain hire and reasonable reward, thereafter to be paid to said defendant, had the care and custody of certain horses of said plaintiffs of great value, to-wit: of the value of $4,000, yet the said defendant so negligently, carelessly, and improperly behaved and conducted itself in taking care of said horses, that by reason of the carelessness and improper conduct of said defendant in that behalf, the said horses then and there became and were greatly hurt, wounded, and otherwise injured, by means of which said premises, as set forth in first and last counts, said plaintiffs have suffered damages to a large amount, to-wit: to the amount of $1,000, and therefore they bring suit, etc."

Defendant pleaded the general issue.

At the close of the plaintiff's testimony, the defendant introduced a shipping bill, partly written and partly printed, signed by plaintiffs, and which was read in evidence, for the purpose of showing a special contract.

On the back of which, there was printed words and figures as follows, to-wit:

1. "The owner of the within mentioned animals undertakes all risk of loss, injury, damage, and other contingencies, in loading, unloading, conveyance, and otherwise, whether arising from the negligence, default, or misconduct, gross, or culpable, or otherwise, on the part of the railway company's servants, agents, or officers.

2. The railway company do not undertake to forward the animals by any particular train, or at any specified hour; neither are they responsible for the delivery of the animals within any certain time, or for any particular market.

3. When free passes are given to persons in charge of animals, or to their owners, or to the consignees named on the way bills, or either of them, it is only on the express condition that the railway company are not responsible for any negligence, default or misconduct, gross, culpable, or otherwise, on the part of the company or their servants, or of any other person or persons whomsoever, causing, or tending to cause, the death, injury, or detention of persons with such free passes, or of such animals, and that whether such passes are used in traveling by any regular passenger train, or by any other train whatever."

The above was signed by the owner as follows: "I agree to the above conditions."

Passes were also delivered to plaintiffs below, with conditions endorsed similar to the above.

Counsel for the defendant then offered evidence tending to show an examination of the cars before the shipping of said horses, and proper care on part of defendants, both in the shipping and transporting of said stock.

Counsel for defendant then rested his case.

Counsel for plaintiffs then gave evidence tending to show that the examination of the cars was on a previous

occasion, that the shipping bill and passes were not signed until after the horses were loaded in the cars.

Counsel for plaintiffs then asked the court to instruct the jury:

1. That the defendant, having undertaken to transport horses over its road, was bound to furnish suitable and proper carriages for that purpose, and are liable if the cars. provided were unfit for the purposes to which applied.

2. That if the injury to the animals occurred through defective carriages, the defendant is not exempted from liability by the terms of the alleged contract.

Which instructions were given.

The counsel for the defendant then asked and requested the court to charge and instruct the jury:

1. That the declaration was against the defendant on its common law liability as a carrier.

Which charge was given.

2. That it was proven and not disputed that in this case there was a special contract for the transportation of the horses, the plaintiff cannot recover upon the present declaration.

3. That the defendant could, by contract, exempt itself from all negligence upon the part of its agents and servants, and such contract is valid, unless it is shown that the company itself was negligent, by proving knowledge of the use of defective cars, or showing the employment of unfit or unsuitable agents.

4. If the company had no notice of the use of defective cars, and did employ suitable and competent agents, whose duty it was to examine and see that the cars for such freight were in sound and suitable condition, the defendant is not, under the contract in evidence, liable for injuries resulting from the negligence of such agents or servants."

· And which three last requests were refused.

The jury rendered a verdict for plaintiff.

GREAT WESTERN RAILWAY CO. v. HAWKINS ET AL.

*Gray & Moran,* and *E. W. Meddaugh,* for plaintiff in error:

This case was before this court in *17 Mich. p. 68.*

The court then held that the special contract between the parties did not exonerate the company from furnishing safe and suitable cars, &c.

The case has been again tried, and a verdict was given in favor of the plaintiffs below.

New questions are now presented, which were not raised upon the previous hearing.

1. The declaration was general against the company as common carriers. There was no allegation that the company failed in the duty of furnishing safe and proper carriages. Under the decision of this court, it might be their duty to do so, but for a recovery there should be a special count. *Shaw v. Railroad, 13 Queen's Bench, 352; 13 Iredell, 518; Kimball v. Rut. & Bur. R. R. Co. 24 Vt. 247; Austin v. Manchester R. R. Co. 5 Eng. L. & Eq. 329; Bissell v. N. Y. Cent. R. R. Co. 25 N. Y. 442; 4 Selden, 375; 24 N. Y. 281, 222; Shaw v. T. & North Midland R. R. Co. 66 Common Law, 345.*

2. While the special contract might not excuse negligence on the part of the company, or its chief officers, it might well protect them from the negligence of subordinate agents, if the company, by its chief officers, had no knowledge of the use of defective cars, and employed proper agents, &c.

*Moore & Griffin,* for defendants in error.

1. We claim that both questions now presented were indirectly, if not directly passed upon by this court, in the former decision of this cause. — *Hawkins v. Great Western R. W. Co. 17 Mich, 57.*

The case of *Shaw v. The York & North Midland Railway Co.* was cited by counsel, and alluded to in the opinion of the court, but this court did not adopt the decision so far as the question of pleading is concerned.

GREAT WESTERN RAILWAY CO. *v.* HAWKINS ET AL,

If this declaration is similar to the one in that case, and that case be law, the position of counsel for plaintiff in error is well taken.

But we say: That the contract, unless alleged or proven, by plaintiff, is matter of defence.

The evidence went only to one point, the insufficiency of the carriages.

The contract was entirely immaterial; it did not affect the negligence proven.

There was no objection to the introduction of the evidence tending to prove the defect in cars.

Is there any sound reason why such evidence as to negligence should not be applied to the second count, charging negligence in taking care of the horses, while in care and custody of the plaintiff.

2. Defective carriages involve the negligence of the principal, and not of the agent merely.

There is an implied warranty that a carrier undertaking to furnish vehicles for a certain purpose will provide suitable ones. — *Lyons v. Mells, 5 East, 428; M'Manus v. The Lancashire & Yorkshire Railway Co. 4 Hurl. & Nor. 327.*

CHRISTIANCY J.

The first point raised by the plaintiff in error (the question of the sufficiency of the declaration to warrant a recovery on the ground of the defectiveness of the cars furnished by the company, without declaring specially upon the contract, &c.) was involved, and must be considered as decided in this case when before us, upon the same declaration, in *17 Mich. 57*: For though the point was not raised, and could not, as the case was then presented, have been assigned for error—the case having been brought here by the plaintiffs below, to reverse the judgment for a charge adverse to them—yet if the objection now taken be well founded in law, the plaintiffs in that case could not

legally have been injured by the charge, since they could not have recovered under their declaration, whatever the charge upon the points to which it related might have been; and the judgment should not, therefore, have been reversed.

The company in this case must be regarded as common carriers, and liable as such, except so far as that liability was qualified by the special contract. The contract was silent as to the fitness of the cars to be furnished by the company. As properly held in the case when formerly before us, the contract did not exempt the company from the duty or obligation to furnish suitable cars; but the common law liability as to this point, and to this extent, remained substantially the same as if no special contract had been made. The reception of the property for transportation, whether under the special contract, or as carriers of such property generally, created the same liabilities in this respect, and the company must be considered as common carriers in reference to this particular duty, for the breach of which alone the recovery was had.

2. The evidence in the case tends to show that the injury to the horses occurred in the course of their transportation, and in consequence of the cars being unfit for the purpose. The wrong or negligence, therefore, in this respect, may properly enough be alleged as a breach of the duty to carry safely. We are aware, there are some cases of this kind, which have required a more special mode of pleading; as under the modern system of pleading in England, which requires more precision in stating the exact nature of the breach of duty, than under the former common law rules. But we see no beneficial purpose to be subserved by a more specific form of declaration.

We think the declaration is sufficient to admit the proof of the negligence or breach of duty which the evidence tended to prove.

The second point raised by the plaintiff in error is, "that while the special contract might not excuse negligence on the part of the company or its chief officers, it might well protect them from the negligence of subordinate agents of the company if its chief officers had no knowledge of the use of defective cars, and employed proper agents," &c.

We must regard this point also, as fully and correctly settled in the case as formerly decided, and no longer open to controversy. The obligation of the company to furnish suitable cars under or notwithstanding this contract, was then held to be absolute on reception of the property, without reference to the fitness or fidelity of agents or officers, subordinate or otherwise, unless some showing was made, that the plaintiffs, with proper opportunities of observation, and with notice of their actual condition, assented to the use of the cars on which their horses were shipped. We see no reason to doubt the correctness of this decision, and think it fully covers the point now raised.

There is no error in the record. The judgment of the Circuit Court must be affirmed, with costs.

The other Justices concurred.