# The Lake Shore & Michigan Southern Railroad Company v. John L. Perkins.

*Railroads : Live stock : Common carriers.* Railroad companies are not, by the common law, common carriers of live stock, and can only make themselves common carriers of that species of property by assuming to convey it as common carriers.—*Mich. S. & N. I. R. R. Co. v. McDonough, 21 Mich., 165.*

*Pleading : Declaration : Common carriers : Live stock.* Under a declaration in case, which alleges, as a cause of action, the violation by a railroad company, of the duties of a common carrier in its transportation of live stock for the plaintiff, and which charges the defendant as common carrier only, proof that the company possesses the character of common carrier of live stock, is essential.

*Evidence : Common carriers : Variance.* Evidence that a railroad company had carried, and still offered to carry, live stock for hire, for all who desired, on terms, as to duties, liabilities, and relations, not recognized by the law of common carriers, but in some respects variant, and in others repugnant thereto, does not tend to prove that such company is a common carrier of live stock. One who has never assumed or offered to carry any chattels of a certain class, except upon special terms exempting him from all the important duties and liabilities of a common carrier, cannot be classed among common carriers of property of that kind, or be made amenable in the character of a common carrier as to such property.

*Heard May 14 and 15.    Decided July 11.*

Error to Lenawee Circuit.

*Warner Wing* and *M. R. Waite,* for plaintiff in error.

*A. L. Millard,* for defendant in error.

GRAVES, J.

This was an action on the case, against the plaintiff in error, to recover damages for an alleged refusal to carry, and a delay in carrying, certain live stock for the defendant in error.

The declaration contained three counts, and the portions material to the present inquiry were in substance as follows :

The first averred that the company were *common carriers* of goods and chattels for hire, from Clayton, in Lenawee

county, in this state, to Buffalo, in the state of New York, and, as *such carriers,* engaged in the business of *carrying* and *transporting cattle, sheep, and hogs,* by railroad from the former to the latter place, and from and to other places on the line of their said road, in October, 1869; and it then sets up the delivery to the company, and their reception as *such carriers,* at that time, of certain cattle, sheep, and hogs of defendant in error, to be expeditiously, and with all reasonable dispatch, carried and conveyed by the company as *such carriers,* to Buffalo, and there to be delivered to defendant in error, for certain reasonable reward to the company. That the company, not *regarding* their *duty* as *such carriers,* by carelessness and negligence, *delayed* the carriage for ten days, to the damage of defendant in error.

The second count averred that the company, being, as stated in the first count, such *common carriers,* and engaged, as *such carriers,* in the business of transporting cattle, sheep, and hogs, and other goods, in and by said railroad cars, upon a railroad of the company, from Clayton to Buffalo, at the time stated in the first count, the defendant in error then solicited the company, as *such carriers,* to receive and convey for him, from Clayton to Buffalo, certain cattle, sheep, and hogs, belonging to him, and then offered to pay therefor, the requisite price; but that the company, not regarding their *duty* as *such common carriers, refused to receive and transport* any of said property *within a reasonable time,* namely, ten days. It then further alleged that, after such refusal and lapse of time, the company, as *such carriers,* did receive the same cattle, sheep, and hogs, to be, expeditiously and without unreasonable delay, transported by them as *such carriers,* to Buffalo; and then, not regarding their *duty* as such carriers, but, through their negligence and improper behavior, and said refusal, *unreasonably delayed*

the arrival of the stock at Buffalo for twelve days, to the damage of defendant in error.

The third count averred that in March, 1870, the company, being such *common carriers* as theretofore stated, the defendant in error then offered to them, at Clayton, fifty neat cattle, belonging to him, to be carried by the company, for him, to Buffalo, and then and there offered to pay the company therefor, the requisite price; but, not *regarding* their *duty* as *such common carriers*, they *refused* to *receive*, or *carry* said cattle, or any of them.

The plaintiff in error pleaded the general issue, and on the trial the jury returned a verdict against them, upon which judgment was entered. A bill of exceptions, containing all the evidence, having been settled and returned, the company complain of the proceedings on two general grounds: *First*, That the evidence had no tendency to prove that the company were common carriers of live stock; and, *Second*, That it was adapted to prove a case materially variant from that alleged.

In arguing these propositions, it was not disputed at the bar, that the company carried, and offered to carry, such property for hire, for all who would employ them'; but the company contended that whatever they had done in that direction, and whatever offers they had made to do that kind of business, had been upon terms and conditions in derogation of material duties and liabilities belonging to common carriers, and in a different character.

The defendant in error, without denying that the conduct of the business, and the offer to conduct it, had been upon terms, and in a manner, excluding duties and obligations belonging to common carriers at common law, and without denying that these terms introduced relations, as to the management, care, and custody of the property carried, very different from those which arise between common

carriers and customers, when other freight is in question and no special arrangement is made, insisted, nevertheless, that, as they carried generally for hire, for all who desired, they were common carriers of such property, and rightly, and in proper form, charged in that character. This position the plaintiff in error earnestly controverted.

In view of the points thus raised, it is needful to consider the legal import of the declaration, in relation to the subject matter, and how the allegations require to be supported.

But, to guard against any misapprehension from the reasoning or language which may be employed, it is proper to premise, that the case does not require an opinion, nor shall we express any, upon the question, whether any modification of the common-law liability in the terms or conditions on which property of other descriptions is to be carried, will convert the carrier into a private carrier or bailee, as to all duties and risks incident to such carriage, or whether, or how far, the duties of common carriers may still attach as to all matters not covered by the modification, or how extensive such modifications must be to take the case entirely out of the law of common carriers. It may, or may not, be true, in any particular case, where the duties imposed upon common carriers at common law, have been modified by agreement, that, in all other respects not covered by such modification the carrier's liability, under a proper declaration, describing the undertaking or duty as modified, would properly be governed and measured by the common-law liability. But the declaration must describe the undertaking or duty as it is. A plaintiff cannot declare upon one undertaking, or duty, or obligation of the defendant, and recover upon another. In the *Mich. S. & N. I. R. R. Co. v. McDonough, 21 Mich., 166*, we held that railroad companies were not, by the com-

mon law, common carriers of live stock, and could only make themselves common carriers of that species of property, by assuming to convey it as common carriers.

In this case the action was founded on the general obligation of the law of common carriers and its infringement, and not upon a contract and its breach.

The company are alleged to have been common carriers of live stock, and to have made themselves liable in that specific character, through omissions of duties, and violations of obligations, involved in that character. The asserted cause of action, and the form and nature of the allegations, therefore, necessitated proof that the company *possessed the character* of common carriers of live stock; and there being no enactment applicable to the company, and adapted to produce any change in the duties and obligations of carriers of that kind of property, was the character so imputed, provable by the evidence adduced? Could it serve to show this character, to prove that, on terms, as to duties, liabilities, and relations, not recognized by the law of common carriers, but in some respects variant, and in others repugnant, the company had carried, and still offered to carry, living animals for hire, for all who desired? If the facts indicated by this query were before us on special verdict, could we say that they made the company common carriers of live stock? I apprehend not. While it is true that a common carrier, in the language of Judge Parker (*Dwight v. Brewster, 1 Pick., 50 ; 2 Par. on Con., 163*), "is one who undertakes, for hire, to transport the goods of such as choose to employ him, from place to place," it is a mistake to suppose that *every* one who so acts is *necessarily* a common carrier, or that no party can so conduct without being a common carrier.

The common law is not so harsh, or meddlesome, or so unreasonable in its bearing upon the freedom of business,

as to make the carriage of property for hire, from place to place, for all such as may choose, *only possible* upon the *condition* that the carrier shall incur all the duties, obligations, and liabilities of a common carrier.    On the contrary, there is no room for doubting that one may lawfully engage and carry on this business of transporting property for hire, for all who wish, under such terms and regulations as to clearly negative the assumption of the character of common carrier, and many cases could be imagined in which a carrier might do all the definition expresses in terms, and still not be a *common carrier*.

In order to apprehend the true common-law idea of a common carrier, and ascertain the import of the allegations in the declaration, the definition of Judge Parker must be read with all the common-law duties and obligations implied or understood.    For a common carrier, without these duties and obligations, is, in legal contemplation, quite impossible.    They are a part of the character, and cannot be severed from it.    And where only a portion of them are assumed, the common-law conception of the character is not satisfied.    It is not enough that the capacity exists to incur these duties and obligations.    They must be actually assumed or contemplated, so as to apply, according to their nature, to events as they arise.

If, then, the common carrier has the distinctness and identity of character supposed, and if, to become invested with that character in its entirety according to the common law, he must become subject to the whole group of what are called his "common-law duties and obligations," it follows, that the declaration in the case must be held to have charged the company in that character, and to have alleged that they were subject to all those duties and obligations.

Admitting this conclusion to be correct, the defendant

in error was bound to prove that the company were common carriers of live stock in the definite sense of being subject to all the duties and obligations belonging to the employment according to the common law.

The liability could only be shown by proving the existence of those conditions on which it was made to depend by the nature and form of the allegations. When a limited responsibility is legally contracted for, the bailee is not a common carrier in that case, in the full common-law sense, but a private carrier, or a bailee of another class, or a common carrier *sub modo* only.—*Dorr v. New Jersey Steam Navigation Co., 1 Ker.* (*11 N. Y.*), *485; New Jersey Steam Navigation Co. v. Merchants Bank, 6 How. R., 344; York Company v. Central Railroad, 3 Wall., 107; Farnham v. Camden & Amboy R. R. Co., 55 Penn. St. R., 53.*

In construing the facts, and ascertaining their legal incidents and requirements in such special cases, the principles applicable to common carriers may sometimes, and in some particulars, perhaps, furnish correct analogies or principles of decision. But as duties and liabilities indispensable to the character of the common carrier are excluded, the bailee cannot, with legal propriety or consistency, be ranked as a common carrier, or charged in the ordinary form in case, upon the mere legal obligations of one.

It would be contrary to every proper idea of justice and legal procedure, in the face of a reasonable and regular objection, to cast a party in damages for having violated the duties of one character, where the action against him is grounded exclusively upon the legal obligations due to another, and essentially different, character.

Now, it must be admitted as settled law, that where one has already assumed the character of common carrier, he may, in special cases, by express agreement, exclude particular common-law duties and liabilities, and that, when this

is done, his common-law character as common carrier, will be cut short, at least to the extent of the variation made by the agreement; and if such is the consequence of an agreement limiting his liability, by one already a common carrier, it seems reasonable to conclude, that one who has never assumed or offered to carry chattels of a certain class, except upon special terms exempting him from all the important duties and liabilities of the common carrier, cannot be classed among common carriers of property of that kind, or be made amenable in the character of a common carrier, as to such property.

Without pursuing this topic further, I am of opinion that the plaintiff was required to show that the company were common carriers of the kind of property mentioned, and moreover, that this was not provable by evidence that they only carried, or offered to carry, on special terms and with limited duties and liabilities.

The character required to be proved, and that shown by such evidence, is radically different, and, as the character of common carrier is not involved in that of a private carrier, or of an ordinary bailee for hire, the facts which prove the latter, will negate the former, where, according to the case, there can be but *one* of these characters. It was plainly apparent, from the course of argument for defendant in error, and from his brief, that he justly considered that, neither the evidence as a whole, or *any part* of it, would allow him to deny that the company, in carrying and offering to carry live stock, kept themselves exempt from the most important duties and liabilities of common carriers, and a review of the record shows, that, respecting this matter, there was no conflict in the evidence, and that all of it had the same drift. It went to prove that the company had long acted, and still offered to act, as *private carriers* of live stock, or in a somewhat analogous character;

but it had no tendency to prove that they had been, or proposed to be, *common carriers* of it. Regarding this point, the evidence is unmistakable. Instead of conducing to prove that the company were common carriers of such property, it went to show that, in handling and offering to handle it, they acted and offered to act exclusively in a character distinctly different and removed from it. And in the treatment of this aspect of the case, the argument for defendant in error is again noticeable. It was not directed to find in the record any evidence denoting that the company carried live stock subject to the range of duties and liabilities, and with the rights of custody, control, and management, belonging to common carriers; but was discreetly aimed rather to maintain that the case did not require such evidence.

Under these circumstances, I do not deem it needful to restate the evidence, or pause to explain detached portions of it. I think it varies, in no substantial respect, in reference to the main question, from that given in McDonough's case, before referred to. And there it was held, upon a critical examination, that the evidence did not tend to prove that the railroad company held themselves out as common carriers of this kind of property, or that they undertook in such character to carry the stock there in question.

If the conclusions which have been reached are correct, the court erred in refusing to give the instruction first prayed by the plaintiff in error, and a new trial must be ordered.

As the exceptions to rulings touching the admission of evidence were abandoned on the hearing, the elaborate and pertinent opinion in McDonough's case, in connection with the explanations now given, seems to make any further discussion on this record unnecessary.

Before taking leave of the case, however, it may be well

to advert to *Mich. Central R. R. Co. v. Hale*, 6 *Mich.*, 243, and *Great W. R. W. Co. v. Hawkins*, 18 *Mich.*, 427, which were cited on the argument as authority for the position of defendant in error.    It is quite true that particular passages of the opinion in the first of these cases, are directly opposed to the views now announced.    But an examination will show, that the expressions quoted were merely the individual notions of the judge who gave the opinion, and were not delivered as the utterances of the court, or considered as essential to the determination, or as at all requisite in reasoning to the result.    We cannot, therefore, consider those expressions as authority, or as having any peculiar force to bind or direct our judgment in the case before us.

In the second cause above mentioned, it was not our purpose to attempt a settlement of the law on the points now directly made.    Nothing of that kind was called for, and the opinion given, was not intended to go beyond the requirements of the case.    At the instance of the plaintiffs below, we had reversed the judgment given by the circuit court on the first trial; and this we could not have done if the company had shown us that the case proved, was materially variant from the case alleged; since it would have appeared, in that event, and for that reason, that the plaintiffs below were not entitled to recover, and were, consequently, not prejudiced by the rulings they complained of. But the company gave no such answer to the objections raised against the judgment below.    They did not suggest it at all, but, tacitly waiving it, they allowed the exceptions to be decided without any reference to the question of variance, and submitted to our judgment, requiring a new trial.    The new trial so ordered being had, the same facts substantially as to the point of variance were brought out which were shown on the first trial, and, therefore, when

the case came again before us, and the company for the first time insisted that there was a variance, the vital question in that regard was, not whether such objection was, in the abstract, well or ill founded, but whether we ought, in the attitude of the case, and in view of the antecedent circumstances, to reverse again, and on a ground which stood constructively ruled against the company, on their theory of the pleadings and evidence, by our first decision, and we thought we ought not to do so.

The subject is more fully explained in McDonough's case, before cited, and needs no further comment.

I am, therefore, of opinion that *G. W. R. W. Co. v. Hawkins* does not stand in our way, and that the judgment under review should be reversed, with costs, and a new trial ordered.

COOLEY, J., and CHRISTIANCY, CH. J., concurred.

CAMPBELL, J.

I agree entirely with all that has been said by my brother Graves to show that there is nothing to authorize an inference that the railroad company ever assumed to become common carriers of live stock, and that, under the pleadings, there can be no recovery.

Had they been common carriers, and merely modified their liability by contract, I think a very different question would be presented.