RICHARDSON vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*September 24 — December 16, 1884.*

COMMON CARRIER. *(1) Transportation of live-stock. (2) Delay in furnishing cars: Notice: Ability.*

1. Whether the obligation of a railroad company to furnish cars for, receive, and transport live-stock is the same as in the case of ordinary inanimate freight, is not determined.

2. In an action against a railroad company to recover damages for a delay in furnishing cars for the transportation of freight of any kind, the complaint must show that reasonable notice was given, and that it was within the power of the company, at the time, to furnish suitable cars. Sec. 1798, R. S.

Richardson vs. The Chicago & Northwestern R'y Co.

APPEAL from the Circuit Court for *Sauk* County.

The case is thus stated by Mr. Justice CASSODAY:

"The complaint alleges, in effect, the incorporation of the defendant under the laws of this state, and as being possessed of all the privileges of railroad companies, and subject to all the liabilities and responsibilities of common carriers of passengers and freight; that October 13, 1882, the plaintiff, being a resident at Ableman, in Sauk county, Wisconsin, a station on defendant's road, and there engaged in the business of buying and shipping stock to the Chicago market for sale, and being fully apprised as to the state of the market at Chicago *for live-stock*, and prices, proceeded to buy for that market 180 hogs (three car-loads), to be loaded on defendant's cars at Ableman, and shipped to the Chicago market; that to be certain about cars, the station agent at Ableman, who had charge of such matters, *was notified* about three days in advance, and he informed the plaintiff that he should have the cars on the following Monday, ready to load on Tuesday; and the plaintiff, having no notice whatever that there would be any trouble in getting said cars, and relying upon the duty of the defendant, as a common carrier of freight, to furnish cars when ordered or requested so to do at the time set, and the assurance of said agent that said cars would be provided, purchased the stock necessary to fill said cars, to wit, 180 hogs, and had the same in the defendant's stock-yards at said station ready to be loaded at the time set and agreed upon, and was there ready to load the same; but the defendant, disregarding its duty in the premises as a common carrier of freight, and its assurance and agreement to and with the plaintiff that said cars would be on hand at the time ordered, neglected and refused to provide said cars at the time appointed and as requested and promised, for several days, to wit, about four days, and consequently the plaintiff finally arrived at Chicago with said stock about four days later than he would have done

had said cars been provided as ordered and agreed, wherefore, by reason of the premises, the plaintiff was obliged to care for and feed said stock for several days more than he ought to have been obliged to, at a cost of $100; and was also greatly damaged by the difference in the state of the market at Chicago, whereby the plaintiff realized $500 less for his said stock than he otherwise would. Wherefore, the plaintiff demanded judgment for $600 and costs.

"To this complaint the defendant demurred generally, and appealed from an order overruling such demurrer."

*William F. Vilas*, for the appellant.

For the respondent there was a brief by *Lusk & Perry*, and oral argument by *Mr. Lusk*.

The following opinion was filed October 14, 1884:

CASSODAY, J. Whether a railway company is under the same obligations to furnish cars for, and receive, safely carry, and store live-stock as other ordinary inanimate freight, is a question upon which much has been written, and some diversity of opinion has been expressed. It is not necessary here to analyze the adjudged cases, nor indicate the weight of reason or authority.

*Betts v. Farmers' L. & T. Co.* 21 Wis. 80, was an action for injuries caused by the carrier's negligence in carrying the plaintiff's cattle in a car with defective and imperfectly fastened doors, which were thrown open by the ·motion of the cars so that the cattle escaped. The cattle were shipped under a special contract, which, among other things, provided that the company should "not be liable for loss in jumping from the cars." In that case, DIXON, C. J., giving the opinion of the court, said: "As to this species of property we think it competent for the carrier to contract that the owner shall assume *all risk* of damage or injury, *from whatsoever cause* happening in the course of transportation." See, also, *C. & N. W. R. Co. v. Van Dresar*, 22 Wis. 511; *Mor-*

*rison v. P. & C. Const. Co.* 44 Wis. 405. This proposition seems to cover more ground than the point actually decided in that case, but the English cases cited by the learned chief justice seem to sustain the proposition. To them others may be added. *M' Cance v. London & N. W. R'y Co.* 7 Hurl. & N. 477; *Gannell v. Ford,* 5 Law T. Rep. (N. S.), 604; *Robinson v. G. W. R'y Co.* 35 L. J. C. P. 123; *Harrison v. London B. & S. R'y Co.* 2 Best & S. 122; *Manchester S. & L. R'y Co. v. Brown,* 50 Law T. Rep. (N. S.), 281. But there are cases even in England which seem to hold a contrary doctrine. *M'Manus v. Lancashire & Y. R'y Co.* 4 Hurl. & N. 327; *Allday v. G. W. R'y Co.* 5 Best & S. 903; *Gregory v. W. M. R'y Co.* 2 Hurl. & C. Exch. 944; *Rooth v. North Eastern R'y Co.* L. R. 2 Exch. 173; *Doolan v. Directors of M. R'y Co.* L. R. 2 App. Cas. 792; *Moore v. G. S. & W. R'y Co.* L. R. 10 Ir. Com. Law, 65. Just how far the cases cited were controlled by the presence or absence of local statutes it is not necessary here to determine.

It is well settled that a carrier of ordinary inanimate freight cannot by any agreement, however plain and explicit, wholly relieve itself from all liability whatsoever resulting from its own negligence. *Black v. Goodrich Transp. Co.* 55 Wis. 319. Just the extent that a carrier of such inanimate freight may by express contract exempt itself from liability for its own negligence need not here be determined. Certainly there is a broad distinction between the risks incident to the carriage of such ordinary inanimate freight, and that of live animals having instincts, habits, propensities, wants, necessities, and powers of locomotion. Requisite care in case of the transportation of such live-stock, therefore, necessarily implies food and water periodically, and at times especial care and shelter outside of the vehicle of carriage. All these things would require help, appliances, conveniences, and extra arrangements not requisite in the case of ordinary inanimate freight, which a carrier might be un-

able or unwilling to furnish, and yet, if furnished by the owner of such live-stock, and the risk incident to them assumed by such owner, the carrier might be able and willing to undertake such transportation. And yet, with all reasonable care, it would be impossible to secure at all times absolute safety in the transportation of such live animals.

. This broad distinction between that class of freightage and ordinary inanimate freight has frequently been observed by the courts. *Blower v. G. W. R'y Co.* L. R. 7 C. P. 655; Shir. Lead. Cas. No. 22, p. 50; *Clarke v. R. & S. R'y Co.* 14 N. Y. 570; *Penn v. B. & E. R'y Co.* 49 N. Y. 204; *Cragin v. N. Y. C. R. R. Co.* 51 N. Y. 61; *Holsapple v. R., W. & O. R. R. Co.* 3 Am. & Eng. R'y Cas. 487; *Smith v. N. H. & N. R. R. Co.* 12 Allen, 531; *Evans v. Fitchburg R. R. Co.* 111 Mass. 142; *Michigan S. & N. Ind. R. R. Co. v. Mc-Donough,* 21 Mich. 189; *Lake Shore & M. S. R. R. Co. v. Perkins,* 25 Mich. 329. There would certainly seem to be no good reason why a carrier might not by express contract exempt itself from damage caused wholly, or perhaps in part, by the instincts, habits, propensities, wants, necessities, vices, or locomotion of such animals. *Ibid.* As to injury from such causes the common law liability and obligation do not seem to attach; certainly not with the same rigidity as they do to ordinary inanimate freight. *Ibid.* Thus, in a late case in Minnesota, it is held that "a railroad corporation which *undertakes* to transport live-stock for hire for such persons as chose to employ it, assumes the relation of a common carrier, *with such modifications of the common law liability* of carriers as arise from the nature of the animals and their capacity for inflicting injury upon themselves and upon each other." *Moulton v. St. P., M. & M. R'y Co.* 12 Am. & Eng. R'y Cas. 13. To these things may well be added other things incident to live-stock.

As to the extent to which a carrier may limit its liability for injury caused by its own negligence, see the valuable

notes to *Holsapple v. R., W. & O. R. R. Co.* 3 Am. & Eng. R'y Cas. 487, and *Harrison v. M. P. R'y Co.* 7 Am. & Eng. R'y Cas. 382; *Peek v. N. S. R'y Co.* 10 H. L. 473; Shir. Lead. Cas. No. 23, p. 51. Whether the common law liability and obligation do not attach when such live-stock has been received by the carrier and is in the course of transportation, and the cause of the injury is wholly unconnected with such live-stock and in no way traceable to the animal, is a question we prefer to leave open for future consideration.

Manifestly, there is no special contract here alleged in the complaint. True, it is alleged that the agent was notified, and that he informed the plaintiff that he should have the cars on the day named; but there are no sufficient allegations to constitute any mutual obligations or binding contract. This is frankly admitted by the learned counsel for the plaintiff. Since the action is not based upon contract, the plaintiff must recover, if at all, by reason of the defendant's liability as a common carrier, upon mere notice to furnish cars and a readiness to ship at the time notified. Did such notice and readiness to ship create such liability? We have seen that a carrier of live-stock may, to at least a certain extent, limit its liability. Whether the defendant was accustomed to so limit its liability or to carry all live-stock tendered upon notice, without restriction, does not appear from the record. If it was accustomed to so limit, and the limitation was legal, it should, at least, have been so alleged, together with an offer to comply with the customary restriction. If it was accustomed to carry all live-stock offered upon notice and tender, and without restriction, then it would be difficult to see upon what ground it could discriminate against the plaintiff by refusing to do for him what it was constantly in the habit of doing for others. But the difficulty here is that the plaintiff has failed to allege facts sufficient to bring his case within the rule suggested. He has not only failed to allege any such custom or holding out

on the part of the defendant, but has failed to allege the facts requisite to create liability for failure to furnish cars for the carriage of ordinary inanimate freight. The statutory requisition is that " every railroad corporation shall, upon *reasonable* notice, *when within its power to do so*, furnish *suitable cars* to any person applying therefor for the transportation of freight." R. S. sec. 1798. Here the complaint is silent as to the notice given being a " reasonable " notice within the meaning of the statute. It may possibly be inferred, as urged by counsel, from the alleged assurance of the agent that the cars would be ready on the day named; but still the complaint lacks the essential allegation that it was at the time within the power of the defendant to " furnish suitable cars " on the day named.

· For the reasons given, the demurrer should have been sustained, with leave to the plaintiff to amend his complaint.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

A motion for a rehearing was denied December 16, 1884.