UNION PACIFIC RAILWAY COMPANY, APPELLANT, v. RAINEY ET AL., APPELLEES.

1. COMMON CARRIERS—LIVE STOCK.
A railroad company transporting live stock as freight is to be regarded as a common carrier as to such freight, and not as a special agent of the owner for their transportation.
2. SAME.
A common carrier is bound to furnish suitable vehicles for the transportation of such freight as he undertakes to carry, and if he fails to do this and injury results from such failure, he is liable.
3. SAME.
The selection of the car for the transportation of the freight being entirely with the railroad company, the plaintiffs had a right to assume that it was suitable for the purposes for which it was furnished, and the company cannot be allowed to escape responsibility for its own negligence upon the plea that they should have noticed the defect and rejected the car.
4. COMMON CARRIERS—SPECIAL CONTRACT.
A common carrier cannot divest himself of liability, either by special contract or notice, where damages or loss results from his fraud, negligence or misfeasance.

*Appeal from the District Court of Arapahoe County.*

ACTION for injuries to horses while in transit from Kansas City to Denver, over defendant's railroad. Judgment for plaintiffs for $500. Defendant appeals. The plaintiffs, in their complaint, allege that defendant was a common carrier for hire, and as such received from plaintiff nineteen horses, which, for a valuable consideration, it undertook to carry and safely transport to the city of Denver, in the state of Colorado ;

that defendant carelessly and negligently, without giving plaintiffs an opportunity to inspect the same, furnished a car for the transportation of said horses, which was not suitable for the carriage of horses, and was defective and unsafe ; that, as a result of defendant's negligence, said horses were damaged in the sum of $1,997.   The first defense consists of a general denial.   The second defense alleges that, at the time of delivery of the horses to defendant, plaintiff Rainey was in possession thereof, and applied to defendant, as a common carrier, to transport the same to Denver, Colorado ; that then and there a special contract was entered into between Rainey, acting for himself and his coplaintiff, and the defendant company, whereby, for a certain reduced rate, the defendant company was released from all liabilities not resulting from defective trucks, wheels, or axles.

Messrs. TELLER & ORAHOOD, and Mr. C. M. KENDALL, for appellant.

Mr. S. L. CARPENTER, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The negligence complained of as having caused the injury to the horses in question consisted in the defendant furnishing an unsuitable car, as it is claimed, for the transportation of the horses.   The particular defect in the car pointed out is that the slats upon the side of the car were too far apart, leaving the apertures so large as to permit the horses' feet to be protruded through the slats ; that as a result of this defect the horses' feet were protruded between the slats, and, being unable to withdraw them, they were, as a result, thrown down, and trampled upon by the others.   The testimony tends to show that, in the manner indicated, four horses received fatal injuries, while others were badly disabled.   The evidence further shows that the car was so unsuitable for the transportation of horses that it was side-tracked by the defendant

company at the station of Ellis, on the route between Kansas City and Denver, the horses removed from the car, and the car repaired, occasioning a delay of 24 hours, during which time the horses were exposed to a beating rain storm, causing additional damage. The case was tried to the court without the intervention of a jury, and, while there is some conflict in the evidence, we must upon this review assume, in support of the judgment of the district court, that the facts alleged by the complaint were sufficiently established by the evidence. As to whether a railroad company transporting animals is to be treated as a common carrier, and not as a special agent of the owner, is a question about which much has been written, and some diversity of opinion exists. In earlier times, when the common law with reference to common carriers had its birth in England, there was in existence no suitable method of transporting live stock, and upon this is largely founded the doctrine of the English courts that railroad companies are not to be considered as common carriers of live stock. This doctrine has led to the announcement of similar conclusions by some of the courts in this country. However, we think the decided weight of authority and reason is in support of the opposite conclusion. In our judgment, no good reason can be found in support of the conclusion that railroad companies are common carriers of the innumerable articles received and transported daily, which does not apply to the transportation of live stock. In this country the live-stock business is one of the most important with which we have to deal. The boundless prairies of the west are the home of vast herds of horses, cattle, and other animals. For the support of this industry, a market for the stock must be found. This market is usually found in distant parts, where the country is more densely populated, and from the business thus furnished railroad companies derive a large part of their revenue. The rights and franchises which have been so freely extended to the railroad companies were upon the condition that they should be common carriers of passengers and merchandise, and we see no reason why an exception should

be made against live stock. Mr. Hutchinson, in his excellent work on Carriers, as a result of a review of the authorities upon the subject, has made certain deductions, which are so tersely and cogently stated by the eminent author that we shall quote and adopt them, without undertaking, in this opinion, to analyze the authorities upon which they are based : " The carrier of living animals as freight is therefore to be regarded as a common carrier as to such freight, and not as a special agent of the owner for their transportation, as has been sometimes contended. But, as the law has introduced by implication into every contract for the carriage of goods an exception to the carrier's liability in cases where the loss of them, while in his charge, has been occasioned by the act of God, or of the public enemy, or by their own decay from an inherent infirmity, or by the fault of the owner himself, so it has, from the necessity and justice of the case, introduced an exception in favor of the carrier of live stock, of account-ability for its loss or injury resulting from its own uncon-trollable vicious propensities, and the damages incident to its carriage from its inherent natural character." Hutchinson on Carriers (2d ed.) § 222. In support of the author's con-clusion that a railroad company engaged in the transportation of live stock is a common carrier of such stock, the follow-ing cases, among the many which may be found, are cited : *Welsh v. Pittsburgh, Ft. W. & C. Railroad Co.*, 10 Ohio St. 65 ; *Moulton v. St. Paul, M. & M. Railway Co.*, 31 Minn. 85 ; *Ormsby v. Union Pacific Railway Co.*, 2 McCrary, 49 ; *Kansas Pacific Railway Co. v. Reynolds*, 8 Kan. 623 ; *Railroad Co. v. Pratt*, 22 Wall. 123 ; Lawson, Cont. § 137 ; *McFadden v. Missouri Pacific Railway Co.*, 92 Mo. 343.

A common carrier is bound to furnish suitable vehicles for the transportation of such freight as he undertakes to carry, and if he fails to do this, and injury results from such fail-ure, he is liable. It has been said, however, that when the shipper assists in loading live stock of his own without ob-jection to the car at the time, he cannot afterwards recover for an injury resulting from a defect in the car apparent to

him. Rorer, R. R., p. 1307. In support of the text, the author cites *Betts v. Farmers Loan & Trust Co.*, 21 Wis. 81; *Chicago & N. W. Railway Co. v. Van Dresar*, 22 Wis. 511; *Ohio & Miss. Railroad Co. v. Dunbar*, 20 Ill. 623; *East Tenn. & Ga. Railroad Co. v. Whittle*, 27 Ga. 535. The conclusions reached in all the above cases are based, to a large extent, upon the holding of the courts in the particular states that railroad companies are not common carriers of live stock, or that the obligation of the common carrier did not rest upon the company in the particular case before the court. Aside from this, in *Betts v. Farmers Loan & Trust Co.*, *supra*, the negligence complained of consisted in the unsafe condition of the door of the car containing the animals. The owner himself, having loaded the car, knew of the condition of the door, and did not inform the company, which was ignorant of the fact. Under these circumstances, it was held that the owner could not recover for injuries received by the cattle in escaping from the car in consequence of such defect; that it was attributable to his own negligence. In *The Chicago & Northwestern Railway Co. v. Van Dresar*, *supra*, the plaintiff loaded the cattle injured in a tight box car, instead of the ordinary cattle car, and the court held that he could not recover for losses resulting from his own negligence. The decision also rests to some extent upon a special contract. In the Illinois case the cars were hired from the railroad company, to be laden as the hirer chose, and the court held that the company did not incur any risk as to the mode adopted by him in loading the cars. In the Georgia' case. it was held that, if the railroad company hires cars to a shipper absolutely, he cannot look to the company, as a common carrier, for damages, in case of injury to his property. The case is hardly in point in support of the text of the author, the facts being that the plaintiff loaded two cars with hogs. The agent of the railroad company promised that he would put slats across the doors. This the agent did not do, and the court held that, if the damage to the hogs was attributable to such omission, the railroad company was liable

for a breach of this contract. It was urged in defence that as plaintiff was present, and acquiesced in the manner in which the hogs were secured, he was guilty of contributory negligence, and could not recover. As a reason for rejecting this defense, the court stated that it was apparent that the owner acquiesced temporarily in the manner in which the doors were closed, relying upon the agent to fulfill his promise to have them properly slatted. At most, it is but a negative authority in support of the text. In all the foregoing cases, it expressly appears that the plaintiff had knowledge of the particular defect which was the proximate cause of the injury, while the proof in this case expressly negatives the knowledge on the part of these plaintiffs of the defect to which the injury in this case is attributable. Plaintiff Rainey was the only witness examined upon this point, his coplaintiff not being present at the time of the shipment. He says : " When I saw the car, I objected to it. * * * My objection to the car was that it was too low, and was a bad car generally. * * * I didn't notice the slats. I never had a horse get his foot in there before, and I did not notice that." Plaintiffs are not brought within the rule given by Mr. Rorer. If, with knowledge of the particular defect relied upon to charge the defendant, they had accepted the car, a different case would have been presented. Even under such circumstances, there is excellent authority in support of the liability. *Railroad Co. v. Pratt, supra.* The defect was one not easily recognized. The selection of the car was entirely with the railroad company, and plaintiffs had a right to assume that it was suitable for the purposes for which it was furnished, and the company cannot be allowed to escape responsibility for its own negligence upon the plea that plaintiffs should have noticed the defect, and rejected the car.

It is contended that, under the written contract, defendant is expressly relieved from liability. Whether a common carrier can, by contract, provide against liability for his negligence, is a question that has occasioned much discussion. Whatever may be the result of judicial decision elsewhere,

in this state the rule denying the right is firmly established. In *Transportation Co. v. Cornforth,* 3 Colo. 280, Thatcher, C. J., says: " The doctrine that a common carrier cannot divest himself of liability either by special contract or notice, where damage or loss results from his fraud, negligence, or misfeasance, may now be considered as well established in this country. See, also, *Carr v. Schafer,* 15 Colo. 48; *Railroad Co. v. Pratt, supra; Moulton v. St. Paul Railway Co., supra.* The judgment of the district court will be affirmed.

*Affirmed.*